(644 P.2d 1013)
No. 53,412

STATE OF KANSAS, *Appellee,* v. WILLIAM R. GROVES, WILLIAM A. CUMMINGS, MICHAEL D. BOOTH, and CONCRETE PLACEMENT, INC., *Appellants.*

Opinion filed May 12, 1982.

*Hugh H. Kreamer,* of Gardner, Davis, Kreamer, Norton, Hubbard, & Ruzicka, Chartered, of Olathe, for the appellants.

*Phillip M. Fromme,* county attorney, and *Robert T. Stephan,* attorney general, for the appellee.

Before SWINEHART, P.J., ABBOTT, J., and HARRY G. MILLER, District Judge Retired, Assigned.

SWINEHART, J.: This is an appeal by defendants from the judgment of the District Court of Coffey County finding them guilty of violating motor vehicle registration statutes K.S.A. 1981 Supp. 8-127 and 8-142.

Defendants have raised the following issues: (1) Is the defendants' concrete pump/boom truck a "self-propelled crane" and therefore exempt from the motor vehicle registration requirement pursuant to K.S.A. 1981 Supp. 8-128? (2) Is defendants' concrete pump/boom truck "road machinery" and therefore exempt from the motor vehicle registration requirement pursuant to K.S.A. 1981 Supp. 8-128? (3) Is K.S.A. 1981 Supp. 8-128 void for vague-

ness and therefore unconstitutional? (4) Does good faith reliance upon an "official" interpretation of K.S.A. 1981 Supp. 8-128 provide a defense under K.S.A. 21-3203 to a criminal charge of failure to register a motor vehicle?

Defendants William R. Groves, William A. Cummings, and Michael D. Booth were driving Schwing concrete pump/boom trucks (hereafter referred to as concrete pump) owned by their employer, defendant Concrete Placement, Inc., of Kansas City, Kansas, on U. S. Highway 75 in Coffey County, Kansas, on October 15, 1979, July 9, 1980, and July 20, 1980, without Kansas vehicle registration. Defendants were stopped and charged with violating K.S.A. 1981 Supp. 8-142 *First* and K.S.A. 1981 Supp. 8-127(*a*).

Trial was had to the district magistrate court. In a memorandum decision, the district magistrate judge found (1) that the motor vehicle registration statutes, K.S.A. 1981 Supp. 8-126 through 8-128 and 8-142, are not so vague as to render them unconstitutionally void; (2) that the concrete pump does not qualify as a "self-propelled crane" or as "road machinery" under the exemptions in 8-128 because the concrete pump does not meet the ordinary description of a "crane" or "road machinery"; and (3) that defendants were guilty as charged.

Defendants appealed from that decision to the District Court of Coffey County. The district court adopted the findings of fact and conclusions of law of the magistrate, and in addition relied on an opinion of the attorney general (Att'y Gen. Op. No. 78-378) which opines that a Thomsen truck-mounted concrete pump is not a crane. The district court found defendants guilty and fined them $11 per violation, plus costs. Defendants appeal from that decision.

In this case, the trial de novo before the district court was based upon the record of evidence presented to the district magistrate judge. On appeal, this court may likewise look at the same record in order to make its own decision. See *In re Estate of Thompson,* 226 Kan. 437, 601 P.2d 1105 (1979).

K.S.A. 1981 Supp. 8-127(*a*) provides:

"(*a*) Every owner of a motor vehicle, motorized bicycle, trailer or semitrailer intended to be operated upon any highway in this state, whether such owner is a resident of this state or another state, or such motor vehicle, motorized bicycle, trailer or semitrailer is based in this state or another state shall, before any such vehicle is operated in this state, apply for and obtain registration in this state

under the provisions of K.S.A. 8-126 to 8-149, inclusive, and acts amendatory thereof or supplemental thereto, except as otherwise provided by law or by any interstate contract, agreement, arrangement or declaration made by the director of vehicles."

## K.S.A. 1981 Supp. 8-128 provides:

"(a) Farm tractors, all self-propelled farm implements including fertilizers and spreaders designed and used exclusively for dispensing liquid or dust fertilizer, road rollers and *road machinery temporarily operated or moved upon the highways,* municipally owned fire trucks, privately owned fire trucks subject to a mutual aid agreement with a municipality and school buses owned and operated by a school district or a nonpublic school which have the name of the municipality, school district or nonpublic school plainly painted thereon need not be registered under this act. A truck mounted fertilizer spreader used or manufactured principally to spread animal dung is not a self-propelled farm implement for the purpose of this section or for the purpose of the act of which this section is a part.

"(b) *Self-propelled cranes* and earth moving equipment which are equipped with pneumatic tires may be moved on the highways of this state from one job location to another, or to or from places of storage, delivery or repair, without complying with the provisions of the law relating to registration and display of license plates but shall comply with all the other requirements of the law relating to motor vehicles and shall not be operated on state maintained roads or highways on Sundays or any legal holidays except Lincoln's birthday, Washington's birthday or Columbus day." (Emphasis supplied.)

## K.S.A. 1981 Supp. 8-142 *First* provides:

"It shall be unlawful for any person to commit any of the following acts:

"*First:* To operate, or for the owner thereof knowingly to permit the operation, upon a highway of any vehicle, as defined in K.S.A. 8-126, which is not registered . . . ."

Defendants contend that a concrete pump is a self-propelled crane and therefore is exempted from the vehicle registration requirement pursuant to K.S.A. 1981 Supp. 8-128.

Neither the Kansas statutes nor Kansas case law define "self-propelled crane." Consequently, this court must construe K.S.A. 1981 Supp. 8-128(b) to see whether a concrete pump can be considered a "self-propelled crane" for the purposes of the exemption.

"Crane" is defined in Webster's Third New International Dictionary 529 (1976) as:

"[A] machine for raising and lowering heavy weights and transporting them through a limited horizontal distance while holding them suspended and [usually] having a jib of timber or steel sometimes affixed to a rotating post held by

guys or having the hoisting apparatus supported by a trolley running on an overhead track."

Defendants maintain that the concrete pump falls within the above definition since the vehicle is capable of lifting and moving heavy weights of wet concrete (two to three thousand pounds), has been used to move columns of concrete into place, and has been used to lift other machines up onto decks. The vehicle consists of a truck chassis with a concrete pump integrated into it. The vehicle is sold to buyers as one complete unit. It has a movable projecting arm or boom which is capable of hoisting a load in a horizontal or lateral direction. Its ordinary use, however, is for the arm to be positioned into place and then to pump wet concrete to the desired location.

Defendants cite to *Moravek's Concrete v. Dept. of Revenue,* 285 Or. 495, 591 P.2d 1379 (1979), as support for their position. *Moravek's* is an appeal by the Oregon Department of Revenue from a decision of the Oregon tax court which held that the plaintiff's concrete pump/boom trucks were exempt from ad valorem personal property taxation since they could be characterized as "self-propelled mobile cranes." The Oregon Supreme Court affirmed, holding that such trucks were within the statutory exemption for "self-propelled mobile cranes." The Oregon court reasoned:

"Ordinary self-propelled mobile cranes and concrete pump/boom trucks are both used in the lifting and placing of wet concrete. However, ordinary self-propelled mobile cranes are used for many other lifting purposes, whereas concrete pump/boom trucks are usually not so used. The conventional mobile crane uses a winch that winds in and lets out a cable running through a boom and attached to a bucket in which the concrete is raised, lowered and swung about to the place where the concrete is desired. A concrete pump/boom truck accomplishes the same purpose by pumping the concrete through a pipe or hose attached to a boom.

. . . . .

"We agree with the tax court in the conclusion that the words 'self-propelled mobile cranes' as used by the legislature were intended as a generic term rather than as a term referring particularly to those mobile cranes in existence at the time of the passage of the statutory exemption. Therefore, the issue is whether a concrete pump/boom truck is a self-propelled mobile crane. We conclude that by its use of a movable boom mounted upon a self-propelled vehicle to raise, lower and swing its load to the desired place, a concrete pump/boom truck employs the same methods and activities which distinguish a mobile crane. It is not reasonable that two vehicles should be distinguished for the purpose of exemption from taxation solely on the basis that one performs the lifting process by an engine that drives a winch while the other does so by an engine that drives a pump. Both are

similar instruments, used for similar purposes, which fit within a common description of a mobile crane. We can see no reasonable basis for a distinction, despite the rule which requires that an exemption from taxation be construed strictly." 285 Or. at 498-499.

The State contends that *Moravek's* should be distinguished from the present case on the basis that *Moravek's* concerns an ad valorem tax where the present case concerns only motor vehicle registration and licensing. We do not find this distinction to be meaningful or dispositive.

The State urges the adoption of the position taken by the attorney general as reflected in his opinion No. 78-378. The attorney general found that truck mounted concrete pump units are not self-propelled cranes as defined by K.S.A. 1981 Supp. 8-128(*b*) and are not exempt from the Kansas truck registration and licensing requirements. This opinion, of course, has no precedential value, and this court is free to reject the attorney general's conclusion.

The State also maintains that assuming arguendo this court finds the concrete pump to fall within the definition of a self-propelled crane, defendants nevertheless should not be granted an exemption based on the particular facts of this case, in light of the restrictions on movement contained in K.S.A. 1981 Supp. 8-128. The evidence shows that during the particular period in which they were stopped, defendants were driving the concrete pumps from their place of business in Kansas City, Kansas, to a job site near Burlington, Kansas, and back again on a daily basis. The exemption statute permits the moving of the vehicles from one job location to another or from places of storage, delivery or repair. The State argues that the statute does not contemplate the vehicles being driven on state highways from five to six hours each day, and specifically prohibits the use of state maintained roads on Sunday. Defendant Booth was issued his citation on Sunday, July 20, 1980.

After a careful examination of the relevant statutes, we find that the distinctions which exist in the statutes for earth moving equipment, road building equipment, and self-propelled cranes unquestionably refer to that equipment which would, on limited occasions, have cause to use the roads and highways within the state to gain access to a job site where the equipment's manufactured function could then be carried out or performed. The evidence presented in this case clearly shows that this particular

equipment, the concrete pump, has as its ordinary and primary purpose the lifting and pumping of wet concrete from the ground level to perpendicular heights, and also horizontally in various directions. The evidence further shows that this equipment was mounted on a truck chassis equipped with pneumatic tires, and that it is only after said equipment arrives at the job site that the purpose of its being occurs. The evidence further shows that on the particular occasions that defendants' concrete pumps were stopped, they were enroute to a job site where their usage was as backup for like equipment which was regularly situated at the job site. The concrete pump's use was temporary and intermittent in nature for short periods of time, rather than for the entire period of time from the commencement of the concrete pouring to its completion at this particular job site. The evidence shows that the concrete pumps were being driven from their place of storage to the job site and back, in accordance with K.S.A. 1981 Supp. 8-128. The use of the state's highways on a Sunday was not, however, in accordance with 8-128.

We find that defendants' concrete pump/boom trucks are within the generic meaning of "self-propelled crane" as it appears in K.S.A. 1981 Supp. 8-128(*b*) and therefore are exempt from the registration provisions of K.S.A. 1981 Supp. 8-127.

We specifically find that this equipment does not come within the classification of K.S.A. 1981 Supp. 8-128(*a*) "road machinery." We also concur with the district court's finding that 8-128 is not vague and therefore is not unconstitutional. The language of 8-128 cannot be said to be so vague and indefinite as to render it unconstitutionally void. *State v. Next Door Cinema Corp.,* 225 Kan. 112, 587 P.2d 326 (1978).

Defendants contend that their reliance on an official interpretation of 8-128 constitutes a defense of mistake of law under K.S.A. 21-3203. That statute reads in part:

"(2) A person's reasonable belief that his conduct does not constitute a crime is a defense if:

. . . .

"(*c*) He acts in reliance upon an order or opinion of the supreme court of Kansas or a United States appellate court later overruled or reversed;

"(*d*) He acts in reliance upon an official interpretation of the statute, regulation or order defining the crime made by a public officer or agency legally authorized to interpret such statute."

Defendants maintain that they relied on both a 1975 letter from

the attorney general's office in which an informal opinion was rendered to the effect that a concrete pump is "road machinery" within the meaning of K.S.A. 8-128(*a*), and a 1978 decision in the District Court of Johnson County (*State v. Cummings,* case No. T-11470), in which the district court found the same type concrete pump to be "clearly within the definition and is in fact a crane and therefore exempt from registration pursuant to K.S.A. 8-128," in making their decision not to register the vehicles. In *State v. V. F. W. Post No. 3722,* 215 Kan. 693, Syl. ¶ 2, 527 P.2d 1020 (1974), the court held:

"Under the provisions of K.S.A. 1973 Supp. 21-3203(2) a person's belief that his conduct does not constitute a crime because of reliance on a court decision is a defense only when he has relied on a decision of the Supreme Court of Kansas or of a United States appellate court later overruled. Such belief is not a defense when reliance is based on a decision of a district, county or other inferior court of the state."

Clearly, defendants' reliance on the decision of a district court does not provide a defense based on mistake of law.

Defendants' reliance on the 1975 attorney general letter is also unfounded. The letter clearly states:

"I must caution you that this opinion does not carry any legal weight. It is rendered merely as our interpretation of the law, which is subject to any different interpretation by any court in the state. In other words, your users may still be subject to citation because of not having a license tag. The only way that the matter can be settled is by a test case in a court of law."

We find defendants' contention of a defense based on mistake of law to be meritless.

The judgment of the trial court is reversed, except in the case where defendant Booth was driving the concrete pump on a Sunday, contrary to K.S.A. 1981 Supp. 8-128(*b*).

ABBOTT, J., dissenting: I would affirm the trial court. In my opinion, exemptions from vehicle registration should be strictly construed against those claiming an exemption. The truck in question is not a crane. It was not designed to be used as a crane, and the fact that it has been used on occasion to lift objects does not make it a crane. Many vehicles that are not cranes have the capacity to pump liquid or lift items. For example, tank trucks have the capability of pumping liquid through a hose; many grain or feed trucks have built-in augers to facilitate loading and unloading, and have the capacity to "lift" grain through the auger

and deposit it elsewhere; many trucks have "booms" attached to lift and move material; and other trucks have "cherry pickers" attached that have the capacity to lift people and materials and move them from place to place.

In my opinion, the legislature did not intend to exempt from registration the vehicle defendants were operating, and I would affirm the conviction on the basis that the vehicle is not a "self-propelled crane."