No. 53,412

STATE OF KANSAS, *Plaintiff-Appellee,* v. WILLIAM R. GROVES, WILLIAM A. CUMMINGS, MICHAEL D. BOOTH, and CONCRETE PLACEMENT, INC., *Defendants-Appellants.*

(653 P.2d 457)

Opinion filed October 22, 1982.

*Scott H. Kreamer,* of Gardner, Davis, Kreamer, Norton, Hubbard & Ruzicka, Chartered, of Olathe, argued the cause, and *Hugh H. Kreamer,* of the same firm, was on the brief for the appellants.

*Phillip M. Fromme,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal from the judgment of the District Court of Coffey County finding the four defendants guilty of violating Kansas motor vehicle registration statutes. The defendants appealed to the Court of Appeals which reversed the convictions in a published opinion, *State v. Groves,* 7 Kan. App. 2d 545, 644 P.2d 1013 (1982). The Supreme Court granted the State's petition for review.

The facts in the case are undisputed. The defendants, William R. Groves, William A. Cummings, and Michael D. Booth, were arrested for driving unregistered Schwing concrete pump/boom trucks owned by their employer, Concrete Placement, Inc., of Kansas City, Kansas, on U.S. Highway 75 in Coffey County on three occasions in October of 1979 and July of 1980. Specifically,

all defendants were charged with violating K.S.A. 1981 Supp. 8-142 and K.S.A. 1981 Supp. 8-127(a). The primary issue presented is this: Was the concrete pump/boom truck in each case either a "self-propelled crane" or "road machinery" and, therefore, exempt from motor vehicle registration under the provisions of K.S.A. 1981 Supp. 8-128?

At the outset, we should look at the Kansas statutes governing registration of motor vehicles and the exemptions granted thereunder. K.S.A. 1981 Supp. 8-126 provides in part as follows:

"8-126. **Definitions.** The following words and phrases when used in this act shall have the meanings respectively ascribed to them herein:

"(a) 'Vehicle.' Every device in, upon or by which any person or property is or may be transported or drawn upon a public highway, excepting devices moved by human power or used exclusively upon stationary rails or tracks.

"(b) 'Motor vehicle.' Every vehicle, other than a motorized bicycle, which is self-propelled.

"(c) 'Truck.' A motor vehicle which is used for the transportation or delivery of freight and merchandise or more than ten (10) passengers.

. . . .

"(f) 'Farm tractor.' Every motor vehicle designed and used as a farm implement power unit operated with or without other attached farm implements in any manner consistent with the structural design of such power unit.

. . . .

"(k) 'Specially constructed vehicle.' Any vehicle which shall not have been originally constructed under a distinctive name, make, model or type, or which, if originally otherwise constructed shall have been materially altered by the removal of essential parts, or by the addition or substitution of essential parts, new or used, derived from other vehicles or makes of vehicles.

. . . .

"(y) 'Self-propelled farm implement.' Every farm implement designed for specific use applications with its motive power unit permanently incorporated in its structural design."

## K.S.A. 1981 Supp. 8-127(a) provides in part as follows:

"8-127. **Registration of vehicles operated in this state; exceptions; temporary operation of certain vehicles without registration, when.** (a) Every owner of a motor vehicle . . . intended to be operated upon any highway in this state . . . shall, before any such vehicle is operated in this state, apply for and obtain registration in this state under the provisions of K.S.A. 8-126 to 8-149, inclusive, . . . except as otherwise provided by law . . . ."

## K.S.A. 1981 Supp. 8-128 provides:

"8-128. **Registration of vehicles; exemptions.** (a) Farm tractors, all self-propelled farm implements including fertilizers and spreaders designed and used exclusively for dispensing liquid or dust fertilizer, road rollers and road machinery temporarily operated or moved upon the highways, municipally owned

fire trucks, privately owned fire trucks subject to a mutual aid agreement with a municipality and school buses owned and operated by a school district or a nonpublic school which have the name of the municipality, school district or nonpublic school plainly painted thereon need not be registered under this act. A truck mounted fertilizer spreader used or manufactured principally to spread animal dung is not a self-propelled farm implement for the purpose of this section or for the purpose of the act of which this section is a part.

"(b) Self-propelled cranes and earth moving equipment which are equipped with pneumatic tires may be moved on the highways of this state from one job location to another, or to or from places of storage delivery or repair, without complying with the provisions of the law relating to registration and display of license plates but shall comply with all the other requirements of the law relating to motor vehicles and shall not be operated on state maintained roads or highways on Sundays or any legal holidays except Lincoln's birthday, Washington's birthday or Columbus day."

### K.S.A. 1981 Supp. 8-142 *First* provides:

"8-142. **Unlawful acts.** It shall be unlawful for any person to commit any of the following acts:

"*First:* To operate, or for the owner thereof knowingly to permit the operation, upon a highway of any vehicle, as defined in K.S.A. 8-126, which is not registered . . . ."

The defendants first contend that a Schwing concrete pump/boom truck is a "self-propelled crane" and, therefore, is exempt from vehicle registration requirements pursuant to K.S.A. 1981 Supp. 8-128. It is agreed that the unit in question is a motor vehicle within the meaning of the statutes. It would be helpful to take a close look at the vehicle and the manner in which it is utilized by its owner. A photograph of the Schwing concrete pump/boom truck involved in each of the arrests is included within this opinion.

At the trial before the district magistrate, Edward Lothamer, manager of defendant Concrete Placement, Inc., testified in detail as to the vehicle's characteristics and the manner in which it operates. He stated that the vehicle is used "as a means of lifting or elevating concrete onto structures which you cannot get to in any other manner." Sixty percent of the company's work is road work and the remainder is commercial work. The vehicle is used sometimes in highway improvement for the construction of bridges. It is used in placing concrete and has a capacity of lifting 1500 pounds or greater. It has a moveable projecting arm or boom. It has a vertical axis with a swinging arm on it, capable of hoisting a load in a horizontal or a lateral direction. Although the

vehicle is designed for the movement of concrete, other heavy bodies may be moved or placed horizontally with the machine. Such vehicles are purchased complete with the concrete pumper attached to the chassis. The vehicle to which the concrete pumper is attached is an International diesel truck. The speedometer on the truck is set like any other truck. It will safely run at 40 or 45 miles per hour and can travel at the legal speed limit of 55 miles per hour. In manufacturing the vehicle, a stock International truck is used to start with and the concrete pump/boom equipment is integrated into the truck. The truck supplies the power for the pump by a "transfer case." Without the truck, the pump would not function.

The mode of transportation of this vehicle on the highways is by the International truck. The vehicle is used any place people need to elevate concrete or to place concrete in a place other than where a truck could just back up to it. The concrete pump is definitely not restricted to just building a road. It takes Schwing American roughly a week or ten days to modify an International truck and mount their equipment on it and then it is sent out as a Schwing concrete pump. This is a specialty machine. The boom carries the concrete. It has a pump unit which pumps wet concrete through a jointed pipeline; the live load weight is transferred over the entire boom. The pump lifts one-half to three-fourth yards of concrete which weighs between 2,000 to 3,000 pounds. It is ordinarily not used to lift heavy concrete blocks or other things. On occasions it has been used to place concrete columns. On occasions they have put a cable on the boom and lifted machinery with it. The purpose of the vehicle is to pump concrete from one location to another. Lothamer described the truck as a crane that can pump concrete.

As to the operation of the vehicle on the highways of Kansas, Lothamer testified that one of the trucks will put in actual road miles of somewhere between 5,000 and 12,000 miles per year. Its total weight is 54,000 pounds. At the time of the arrests, the equipment was being utilized in the construction of the Wolf Creek power plant in Coffey County. The vehicle was customarily driven in the morning from the company's place of business in Kansas City, Kansas, to the Wolf Creek power plant site and then back to Kansas City in the evening. The driver is allowed three hours to drive from the company's place of busi-

ness to the Wolf Creek site and another three hours to drive back home each night. Thus, in connection with the construction involved in this case, the trucks were on the public highways about six hours per day.

The record shows that the Kansas attorney general and district courts have not been entirely consistent in their legal conclusions as to whether a concrete pump/boom truck is exempt either as a road machine or a self-propelled crane. In March, 1975, an assistant attorney general issued an opinion that a similar vehicle was exempt as a road machine. He emphasized, however, that the opinion was not entitled to legal weight. In July of 1978, Judge Robert G. Jones of Johnson County held a similar vehicle to be exempt as a self-propelled crane. In December of 1978, the attorney general issued his opinion that the vehicle was not exempt as either a road machine or self-propelled crane. In April of 1980, the general counsel of the Kansas Department of Revenue issued an opinion to the effect that the vehicle was not exempt and was required to be registered.

In this case, District Magistrate Orville E. Steele held the vehicle was not exempt. This was affirmed on appeal by District Judge James J. Smith. As noted above, the Court of Appeals reversed the case by a two-to-one decision.

Neither the Kansas statutes nor case law has specifically defined a "self-propelled crane." This court must construe the statutes set forth above to determine whether a concrete pump/boom truck is a self-propelled crane within the exemption provided in K.S.A. 1981 Supp. 8-128(*b*). The term "crane" is defined in Webster's Third New International Dictionary 529 (1976) as:

"[A] machine for raising and lowering heavy weights and transporting them through a limited horizontal distance while holding them suspended and [usually] having a jib of timber or steel sometimes affixed to a rotating post held by guys or having the hoisting apparatus supported by a trolley running on an overhead track."

Simply stated, the question is whether the vehicle is a crane or a truck specially equipped with a concrete delivery system. After considering the registration statutes in their entirety, we have concluded that a Schwing concrete pump/boom truck is a motor vehicle required to be registered and is not a self-propelled crane as exempted in K.S.A. 1981 Supp. 8-128(*b*). It is clear from a

reading of the statutes that the legislature intended to control, in some respects, all motor vehicles operated upon the highways of this state. In the case of self-propelled cranes and earth moving equipment, although they are exempt from registration by virtue of K.S.A. 1981 Supp. 8-128(*b*), that statute requires such vehicles *to comply with all of the other requirements relating to motor vehicles* and there is a specific restriction that such equipment shall not be operated on state highways on Sundays or certain legal holidays.

It should be noted that K.S.A. 1981 Supp. 8-128 places exempt vehicles into two categories: Category (a) includes special purpose motor vehicles such as farm tractors, self-propelled farm implements, including fertilizers and spreaders designed for dispensing liquid or dust fertilizer, road rollers, and road machinery temporarily operated or moved upon the highways, certain municipal fire trucks and school buses. Section (*a*) states specifically that a truck-mounted fertilizer spreader used or manufactured principally to spread animal dung is not a self-propelled farm implement for the purpose of this section and hence would not be exempt. Section (*b*) of 8-128 covers an entirely different type of vehicle—self-propelled cranes and earth moving equipment which are equipped with pneumatic tires. That section restricts such unregistered vehicles to movements from one job location to another, or to or from places of storage, delivery, or repair. This section obviously contemplates only a very limited operation of such vehicles upon the state roads and highways.

We believe that the exemptions provided for in K.S.A. 1981 Supp. 8-128 must be construed in accordance with the obvious intention of the legislature. Surely, the legislature did not intend to exempt ordinary dump trucks as earth moving equipment merely because they are used to haul dirt. Likewise, the exemption of self-propelled cranes was not intended to exempt from registration any motor vehicle which happens to be equipped with a device for lifting. A self-propelled farm implement equipped with a built-in fertilizer or spreader designed and used to dispense liquid or dust fertilizers is specifically named and exempted. A concrete pump/boom vehicle which is not specifically named as exempt is essentially a truck with a built-in concrete spreader designed to dispense concrete.

It is fair to assume that the legislature intended to exempt

certain kinds of vehicles from registration because of their limited operation on the highways of the state. Large earth moving equipment is operated on the highways only for limited periods in which they are moved from one job location to another or to or from places of storage, delivery, or repair to the job site. Likewise, in exempting self-propelled cranes with pneumatic tires, the legislature clearly intended to exempt certain vehicles which are specially equipped and designed exclusively for the lifting of heavy weights and which, because of their weight and size, are permitted on the highways of the state under very limited circumstances.

In our judgment, a specially equipped truck, otherwise subject to registration, is not a "self-propelled crane" merely because it includes some device for the lifting or raising of materials, goods, or equipment. Adopting such an interpretation would exempt from registration any so-called "cherry pickers," such as those used by utility companies, tree-trimming services, or signboard companies, and indeed any large tow truck or "wrecker" equipped with pneumatic tires. We, therefore, hold that the Schwing concrete pump/boom truck involved in this case is not a "self-propelled crane" within the exemption provided for in K.S.A. 1981 Supp. 8-128(b).

The defendants in their brief cite *Moravek's Concrete v. Department of Revenue,* 285 Or. 495, 591 P.2d 1379 (1979). In our judgment, that Oregon case is distinguishable because of the peculiar language of the Oregon statute which provided that certain self-propelled vehicles were not subject to ad valorem taxation. Vehicles exempted included among other things mobile homes, travel trailers, *tow cars (including tow cars with cranes, hoists or dollies), truck-mounted transit mixers, or "self-propelled mobile cranes."* The Oregon court concluded that a concrete pump/boom truck should be exempt under the statute as a self-propelled mobile crane.

The defendants, in the alternative, contend that the concrete pump/boom trucks fall into the category of "road machinery" which is exempted in section (a) of K.S.A. 1981 Supp. 8-128. We agree with the district court and with the Court of Appeals that such vehicles are not exempt from registration as road machinery. Although such vehicles at times are used in the construction of highway bridges, they are customarily used in other types of

construction where it is necessary to elevate concrete. Here, approximately 40 percent of the concrete work carried on by defendant, Concrete Placement, Inc., does not involve road or highway construction. On the dates the three traffic citations were issued in this case, the vehicles were not being used as road machinery but to pour concrete at the Wolf Creek power project. We have no hesitancy whatsoever in holding that these concrete pump/boom vehicles are not "road machinery" under the exemption provided under section (a) of 8-128.

The defendants' third point on the appeal is that K.S.A. 1981 Supp. 8-128 is unconstitutional because of vagueness. The test to determine if a criminal statute is unconstitutionally vague and indefinite is discussed in *State v. Kirby,* 222 Kan. 1, 563 P.2d 408 (1977), as follows:

"The test to determine whether a criminal statute is unconstitutionally void by reason of being vague and indefinite is whether its language conveys a sufficiently definite warning as to the conduct prescribed when measured by common understanding and practice. If a statute conveys this warning it is not void for vagueness. Conversely, a statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process." Syl. ¶ 1.

It has been said that the test for vagueness is a common-sense determination of fundamental fairness. *State v. Goza,* 4 Kan. App. 2d 309, 605 P.2d 594 (1980). We have concluded that K.S.A. 1981 Supp. 8-128 is not constitutionally void for vagueness. When the motor vehicle registration statutes are all construed together, as we have done above, we find that K.S.A. 1981 Supp. 8-128 is not unconstitutionally vague because of the manifest intention of the legislature to require the registration of all vehicles capable of regular travel on the roads and highways of this state.

The defendants' final point is that they relied upon an official interpretation of K.S.A. 1981 Supp. 8-128 and, thus, are provided the defense of mistake of law under K.S.A. 21-3203. K.S.A. 21-3203 provides in part as follows:

"(2) A person's reasonable belief that his conduct does not constitute a crime is a defense if . . . .
"(d) He acts in reliance upon an official interpretation of the statute, regulation or order defining the crime made by a public officer or agency legally authorized to interpret such statute."

In *State v. V.F.W. Post No. 3722,* 215 Kan. 693, 698, 527 P.2d 1020 (1974), this court construed the above statute as follows:

"[U]nder the provisions of K.S.A. 1973 Supp. 21-3203(2) a person's belief that his conduct does not constitute a crime because of reliance on a court decision is a defense only when he has relied on a decision of the Supreme Court of Kansas or of a United States appellate court later overruled. Such belief is not a defense when reliance is based on decisions of the various district, county and other lower courts of the state."

The record clearly shows that in this case at the time the offenses were committed the attorney general, in opinion No. 78-378 issued December 4, 1978, had concluded that truck-mounted concrete pump/boom units are not cranes as defined by K.S.A. 8-128(*b*) and thus not exempt from Kansas registration requirements. We have concluded that the district court and the Court of Appeals were correct in holding that defendant's reliance on the defense of mistake of law was without merit.

For the reasons set forth above, the judgment of the district court is affirmed. The judgment of the Court of Appeals is reversed.

FROMME, J., not participating.

SCHROEDER, C.J., dissenting: I respectfully dissent from Syllabus ¶ 1 and the corresponding portion of the opinion. The self-propelled vehicle in this case equipped with a moveable projecting arm or boom capable of lifting and dispensing wet concrete, as illustrated in the photograph, is a self-propelled crane within the legislative intent for exemption from registration in my opinion. It accomplishes the identical results in construction work that conventional cranes accomplish by lifting heavy materials into places otherwise inaccessible. This special equipment, which the court chooses to catalog as a truck, can be used for only one purpose — not transportation on highways, but the delivery of wet concrete at a construction site to places of elevation or to places at the construction site which are otherwise inaccessible.