(180 P.3d 1068)
No. 98,192

STATE OF KANSAS, *Appellee*, v. KIRK L. ZEIT, *Appellant*.

—

Opinion filed April 4, 2008.

*Kurt S. Brack* and *Jason R. Whitener*, of Holbrook & Osborn, P.A., of Overland Park, and *John R. Kurth*, of Kurth Law Offices Incorporated, P.A., of Atchison, for appellant.

*Gerald R. Kuckelman*, county attorney, and *Paul J. Morrison*, attorney general, for appellee.

Before GREEN, P.J., GREENE and LEBEN, JJ.

LEBEN, J.: Kansans who operate vehicles on the roadways of Kansas must register them with the division of motor vehicles. But self-propelled cranes—defined by statute as cranes where an operator controls them from a permanent housing or module on the

crane and the crane is not used to transport other property—are exempt from this requirement. An employee of Midwest Crane & Rigging, Kirk Zeit, was convicted of a misdemeanor for operating one of the company's cranes on a roadway when it was not registered. We must set aside this conviction because the vehicle at issue meets the statutory definition of a self-propelled crane.

*The Legislature Has Made It Illegal to Operate an Unregistered Vehicle but Has Exempted Self-Propelled Cranes.*

K.S.A. 2007 Supp. 8-142 *First* makes it unlawful to operate an unregistered vehicle on a Kansas highway. It is an unclassified misdemeanor when an individual wrongly claims that the unregistered vehicle he or she is driving is exempt as a crane, and the statute requires a minimum fine of $500. Zeit was convicted here of operating an unregistered vehicle on U.S. 59 Highway in Leavenworth County while Zeit was claiming the vehicle was an exempt crane. The district court fined Zeit $500.

K.S.A. 2007 Supp. 8-128(b) provides an exemption to this registration requirement for self-propelled cranes that are permanently fashioned to operate as a crane and not used for any other purpose:

"Self-propelled cranes where the crane operator on a job site operates the controls of such crane from a permanent housing or module on the crane and the crane is not used for the transportation of property, except the property that is required for the operation of the crane itself . . . may be moved on the highways of this state from one job location to another, or to or from places of storage, delivery or repair, without complying with the provisions of the law relating to registration and display of license plates but shall comply with all the other requirements of the law relating to motor vehicles."

The statute uses four ingredients to define a self-propelled crane. It must be: (1) a crane (2) that is self-propelled and (3) not used for the transportation of property (other than what's required to operate the crane), with (4) the crane operator running the crane's controls from a permanent housing or module on the crane.

*The Evidence in This Case Shows a Crane with Permanently Fixed Controls Contained within Metal Box Structures.*

Evidence about the crane Zeit was operating came primarily from Steven Miller. He is a crane rental manager with Midwest

Crane & Rigging, the company that owned the crane and employed Zeit. For readers seeking visual cues, photos of the crane are found at the end of our opinion.

The vehicle consists of a truck cab and an attached crane, which can lift up to 21 tons. The crane is integrated into the vehicle so that the truck's transmission operates the crane. The crane mechanism pivots from a spot right behind the truck cab and hovers over a flat bed. The controls for the crane are permanently affixed to both the right and left side of the pivot point so the crane can be operated from either side. A removable seat can be hooked onto a metal screen between the controls and the cab so that the crane operator can sit when working for long periods of time. The controls are enclosed in metal, box-like structures; Miller said there was no larger housing around the area because such a structure would interfere with the movement of the crane. The crane, along with an outrigger system and counterweights that stabilize it, was all integrated with the cab when Midwest Crane & Rigging obtained it. Miller also testified that the crane had not been used to transport anything and that only qualified crane operators had been hired to operate it.

Zeit also testified that he had never transported any property using the vehicle. On the day he was stopped, Zeit said he was traveling from the company yard where the vehicle was stored to a job site.

*The Vehicle at Issue Matches the Statutory Definition of a Self-propelled Crane.*

The case before us presents a pure case of statutory interpretation. No evidence was presented contrary to that of Miller and Zeit, and the district court did not make any adverse credibility findings or indicate disbelief about any of their testimony. We interpret a statute based upon our own judgment, without deference to the interpretation of the district court. *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006). When words are used in an ordinary manner, a dictionary definition may be a useful guide to meaning. See *State ex rel. Topeka Police Dept. v. $895.00 U.S. Currency*, 281 Kan. 819, 827, 133 P.3d 91 (2006).

We turn then to the four requirements for finding a self-propelled crane for the purposes of K.S.A. 2007 Supp. 8-128(b). We rely upon the American Heritage Dictionary for the common usage of key terms.

The first requirement is that it be a crane. That's "[a] machine for hoisting and moving heavy objects by means of cables attached to a movable boom." American Heritage Dictionary 425 (4th ed. 2000). This vehicle has cables and a movable boom, and it can lift 21 tons. The first requirement is met.

The second requirement is that it be self-propelled. Something self-propelled "[c]ontain[s] its own means of propulsion," like a self-propelled golf cart. American Heritage Dictionary 1580. The undisputed testimony is that the crane and truck cab are fully integrated; wherever the cab goes, the crane must go too. In addition, the same transmission that moves the vehicle also powers the crane. This is a self-propelled crane, so the second requirement is met.

The third requirement is that the vehicle not be used to transport anything except items required for the operation of the crane itself. The undisputed testimony was that the crane at issue had never been used by Midwest Crane to haul anything. The third requirement is met.

The final requirement is that the crane operator run the crane's controls from a permanent housing or module on the crane.

- Permanent means "[n]ot expected to change in status, condition, or place."
- Housing means "[s]omething that covers, protects, or supports, especially . . . [a] frame, bracket, or box for holding or protecting a mechanical part."
- Module means "[a] self-contained assembly of electronic components and circuitry . . . that is installed as a unit." American Heritage Dictionary 1309, 852, and 1131.

The controls are enclosed in metal boxes with knobs and levers sticking out of the top. The controls are fixed in place and not moved by the operator; instead, the operator chooses whether to

work from the controls located on the right side of the boom or the left, depending upon anticipated movement of the boom. The metal boxes that contain the control system for the crane constitute a permanent housing or module fixed onto the crane.

One might argue that when the statute says that "the crane operator on a job site operates the controls of such crane *from* a permanent housing or module on the crane," that the operator must be *inside* the housing or module. In that case, the crane would need to have some large, enclosed control cabin in which the operator—as well as the control mechanisms—were fully enclosed within the housing or module. The State argues here for this construction of the statute. But neither the common usage of housing nor the common usage of module suggests such an interpretation. A module generally is a self-contained assembly of the components, not a place for an operator to sit. And a housing in this context usually just provides protection for the mechanical components, not the operator. Had the legislature wanted to indicate that the control area itself had to be enclosed, it could have required that the crane operator operate the controls "from *within* an *enclosed and* permanent housing or module on the crane." It did not do so. The fourth requirement is met.

To the extent that any legitimate ambiguity lingers in this statute, we believe it appropriate to interpret it in light of the rule of lenity. Under that rule, penal statutes are narrowly construed in favor of the defendant, including laws establishing criminal liability. See *State v. Rupnick*, 280 Kan. 720, 735, 125 P.3d 541 (2005); *State v. Walker*, 277 Kan. 849, 854, 89 P.3d 920 (2004). This is done because citizens should have fair notice in the statute of conduct that is criminal. See *State v. Busse*, 252 Kan. 695, 699, 847 P.2d 1304 (1993). Our reading of the statute relies upon the ordinary usage of its language; any interpretation more favorable to the State would run afoul of the rule of lenity. It also would strain the language actually used by the legislature. It seems to us, then, based on the current statutory language of K.S.A. 2007 Supp. 8-128(b), that the vehicle Zeit was operating was a self-propelled crane and exempt from registration.

*Prior Kansas Caselaw Does Not Dictate the Result Here Because the Statute at Issue Has Been Substantially Amended.*

Two previous Kansas appellate decisions upheld citations for failing to register a vehicle that the operator claimed was an exempt crane. The district court relied on one of those, *State v. Groves*, 232 Kan. 66, 653 P.2d 457 (1982), when it concluded that this vehicle was just a truck with a lifting device, not a self-propelled crane. But amendments made over the years to K.S.A. 8-128(b) make the current statute significantly different than the ones at issue in those cases.

At the time *Groves* was decided, the statute exempted "[s]elf-propelled cranes and earth moving equipment which are equipped with pneumatic tires" from registration so long as they were moved on the highways between job sites or for storage, delivery, or repair. 232 Kan. at 68 (quoting K.S.A. 1981 Supp. 8-128[b]). The vehicle in question was described as truck-mounted with a moveable, projecting boom capable of lifting and of pumping concrete, essentially a "crane that can pump concrete." 232 Kan. at 70. With no specific definition of the term "self-propelled crane" in the statute, the court held that a "truck specially equipped with a concrete delivery system" was not a self-propelled crane under the statute. 232 Kan. at 71-72. Today's statute defines self-propelled crane, and the crane operated by Zeit meets the statutory definition.

A panel of our court addressed the issue of what constituted a self-propelled crane under an earlier version of K.S.A. 8-128(b) in *State v. Shoemaker*, No. 94,993, unpublished opinion filed August 18, 2006. In that case, as in ours, a citation had been given to an employee of Midwest Crane & Rigging. The statute at issue was similar—but not identical—to the current one. K.S.A. 8-128(b) then exempted "[s]elf-propelled cranes where the operator on a job site operates the controls of such crane from a permanent housing or module on the crane and the crane is not *constructed* for the transportation of property." (Emphasis added.) Our court affirmed the misdemeanor conviction for violation of K.S.A. 8-142 *First* in *Shoemaker*, noting that the vehicle did not meet the statutory definition because it was constructed and could be used to haul freight if weight restrictions were met. Slip op. at 5.

After the date of the citation in *Shoemaker*, the legislature revised the statute again. A representative of Midwest Crane & Rigging testified before the Senate Transportation Committee. The legislature changed the requirement that the crane not be *"constructed* for the transportation of property" to one that it not be *"used* for the transportation of property." That is a key difference. And this change was proposed to the Senate Transportation Committee by the representative of Midwest Crane & Rigging; a narrower definition of crane was offered by the Kansas Department of Revenue. Minutes, Senate Transportation Committee, February 7, 2006; Conference Committee Report Brief, Senate Bill No. 374, March 30, 2006.

This 2006 change in the statute distinguishes the result in *Shoemaker* from our case. In both *Shoemaker* and our case, the boom of the crane sits over a flat bed, which could certainly be used for the transportation of property. In *Shoemaker*, there was "ample testimony that the truck which serves as the base of the crane could be used to haul freight if highway weight restrictions were not exceeded." Slip op. at 5. In our case, however, Miller testified not only that the vehicle had never been used to haul freight, but that it could not be used for that purpose without exceeding allowable weight restrictions on roadways. *Shoemaker* is not applicable here, either.

The judgment of the trial court is reversed, and Zeit's conviction is set aside.