IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 114,168

MIDWEST CRANE & RIGGING, LLC,
*Appellant*,

v.

KANSAS CORPORATION COMMISSION,
*Appellee.*

SYLLABUS BY THE COURT

A crane permanently bolted to a truck chassis and associated necessary tools do not qualify as cargo under 49 U.S.C. § 31101(1) (2012), and the truck itself thus does not qualify as a commercial motor vehicle under the federal Unified Carrier Registration Act.

Review of the judgment of the Court of Appeals in an unpublished opinion filed August 5, 2016. Appeal from Shawnee District Court; REBECCA W. CROTTY, judge. Opinion filed July 21, 2017. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed.

*Kurt S. Brack*, of MDP Services, LLC, of Overland Park, argued the cause and was on the briefs for appellant.

*Dustin Lee Kirk*, deputy general counsel, Kansas Corporation Commission, argued the cause and was on the briefs for appellee.

1

The opinion of the court was delivered by

BEIER, J.: This appeal concerns whether a truck with a crane permanently attached to it qualifies as a commercial vehicle subject to registration and fee payment under the federal Unified Carrier Registration Act (UCR). See 49 U.S.C. § 14504a (2012). The answer to this question turns on whether the crane and associated tools qualify as "cargo," as that term is used in the Act. Because the crane and associated tools are not cargo, the truck is not a commercial vehicle subject to the registration and fee requirements.

## FACTUAL AND PROCEDURAL HISTORY

Appellant Midwest Crane & Rigging, LLC, is a contractor that provides a "crane service." One of its employees was stopped by Kansas Highway Patrol Master Trooper Christopher Beas. Beas had noticed that the truck the employee was driving did not have a license plate. He identified the truck as part of Midwest's fleet, photographed the truck, documented the stop, and identified two possible violations: (1) failure to pay a UCR fee, and (2) failure to display a current license plate.

The truck's only purpose was to provide the crane service. It has a crane permanently attached to its chassis. The driver was headed to a job site where the crane was to be used to hoist a large air conditioning unit onto the roof of a building. Otherwise the truck carried only the tools necessary to operate the crane, such as cables, shackles, and a spreader beam.

2

The license plate violation was dismissed after Midwest established that the truck was exempt from registration requirements, because it is classified as a self-propelled crane. See K.S.A. 2016 Supp. 8-128(b); *State v. Zeit*, 39 Kan. App. 2d 364, 180 P.3d 1068 (2008). But the UCR issue remained, and the Kansas Corporation Commission fined Midwest $300 for failure to register and pay the fee required by the Act. See 49 U.S.C. § 14504a(a)(1)(A)(ii).

Midwest requested a hearing to challenge the UCR violation.

The resulting administrative hearing focused on whether the truck qualified as a commercial motor vehicle under the Act, which requires a "motor carrier" to pay a fee based on the size of its fleet of "commercial motor vehicles." The debate largely centered on the meaning of "cargo," as used in the definition of "commercial motor vehicle" under the Act. See 49 U.S.C. § 31101(1) (2012) ("'commercial motor vehicle' means . . . a self-propelled or towed vehicle used on the highways in commerce *principally to transport passengers or cargo"* [emphasis added]).

The Act is included as a part of the Motor Carrier Safety Improvement Act (MCSIA). The Commission considered not only the definition of commercial motor vehicle from the UCR but also a second definition of commercial motor vehicle from a different subsection of the MCSIA. See 49 U.S.C. § 31132(1) (2012) (subchapter III— Safety Regulations: "'commercial motor vehicle' means a self-propelled or towed vehicle used on the highway in interstate commerce *to transport passengers or property"*).

In its order upholding the fine, the Commission found that "the subject vehicle is a straight truck with a crane apparatus, or personal property, attached." In other words, it treated the term "cargo" from § 31101 and the term "property" from § 31132 as

3

synonymous, enabling it to conclude that the truck was a "commercial motor vehicle." The Commission therefore upheld the UCR fee assessed against Midwest.

Midwest petitioned for judicial review after the Commission denied a request for reconsideration. The district court treated the Commission's interpretation as "reasonable" and affirmed, determining that it made sense to require every commercial motor vehicle subject to the safety regulations of 49 U.S.C. § 31132(1) to also be subject to a UCR fee.

On Midwest's appeal to the Court of Appeals, a majority of the panel affirmed the Commission's order, although it disagreed with its logic. *Midwest Crane & Rigging, LLC v. Kansas Corp. Comm'n*, No. 114,168, 2016 WL 4161384, at *11 (Kan. App. 2016) (unpublished opinion).

The majority ruled that "cargo" and "property" are not wholly synonymous, interpreting "cargo" to be "goods, *i.e.*, tangible or moveable personal property, other than money, transported or conveyed by a self-propelled vehicle for commercial purposes." *Midwest*, 2016 WL 4161384, at *9 (relying on definition of "cargo" from Congress' use of term for purposes of air commerce and safety, as well as both legal and standard dictionaries).

Applying its definition of cargo to the truck at issue in this case, the majority held that "[i]n this commercial enterprise, Midwest's crane, spreader beam, and tools were separate, moveable items of personal property or goods which, transported together to the worksite, were all necessary to enable Midwest Crane to hoist an air conditioner onto the roof of the building." 2016 WL 4161384, at *10. "[T]he self-propelled vehicle in question was a commercial motor vehicle for purposes of 49 U.S.C. § 31101(1)," because "[t]he vehicle was used on the highway in commerce principally to transport the crane, spreader beam, and tools to the job site." 2016 WL 4161384, at *10. The attachment of the crane

to the truck chassis "merely [made it] easier to transport" this item of cargo "from one jobsite to another without the need for loading and unloading." 2016 WL 4161384, at *10. "[D]espite this attachment," the majority said, "the truck and crane retain their independent character because the crane does not in any way affect the mechanical functioning of the truck." 2016 WL 4161384, at *10.

Judge G. Gordon Atcheson dissented. He would have held that the crane, "permanently affixed to the chassis of a truck and then used with the truck as a single piece of equipment on construction projects," is not "cargo" and would have reversed the civil penalty assessed against Midwest. 2016 WL 4161384, at *17. Judge Atcheson interpreted "cargo" to mean "salable items or similar things being moved from one place to another by truck, train, or other conveyance. The objects are placed on the conveyance, transported, and then removed. They are separate from the means of conveyance." 2016 WL 4161384, at *19. He also disagreed with the majority's statement that the truck was used "principally" to transport cargo: "The truck-crane's principal (and only) use depends upon the permanently attached crane. The related items would not be transported if there were no crane." 2016 WL 4161384, at *20.

We granted Midwest's petition for review.

DISCUSSION

The provisions of the Kansas Judicial Review Act (KJRA) govern this appeal from the Commission's decision. K.S.A. 77-601 *et seq.* We may grant relief only in limited circumstances, including when the Commission erroneously interpreted or applied the law. K.S.A. 2016 Supp. 77-621(c)(4). Resolution of the issue presented requires statutory interpretation or construction, tasks that raise questions of law subject to de novo review.

5

*Norris v. Kansas Employment Sec. Bd. of Review*, 303 Kan. 834, 837, 367 P.3d 1252 (2016).

Whenever possible when we are interpreting a federal statute, we "'should seek direction from the decision[s] of federal courts interpreting similar language.' [Citation omitted.]" *Sierra Club v. Moser*, 298 Kan. 22, 48, 310 P.3d 360 (2013). Yet, absent any binding federal authority, it is within our power to blaze an interpretive trail. *Sierra Club*, 298 Kan. at 48.

We owe no deference to the Commission's statutory interpretation. *Ft. Hays State Univ. v. University Ch., Am. Ass'n of Univ. Profs.*, 290 Kan. 446, 457, 228 P.3d 403 (2010) ("an agency's or board's statutory interpretation is not afforded any significant deference on judicial review").

*Regulating Motor Carriers*

Beginning in 1965, states were permitted by Congress to require motor carriers operating within their borders to register and pay a fee in order to operate lawfully. See *Yellow Transp., Inc. v. Michigan*, 537 U.S. 36, 39-40, 123 S. Ct. 371, 154 L. Ed. 2d 377 (2002) (explaining history of systems for registration of motor carriers); 49 U.S.C. § 13102(14) (2012) (motor carrier defined as "person providing motor vehicle transportation for compensation"). Until 2007, the registration system generally operated as a Single State Registry System, under which a motor carrier need register annually only with one state, which would satisfy the registration requirement for all participating states. See 49 U.S.C. § 14504(c) (2006) (defining single state registration system).

Congress then enacted the UCR to "authorize funds for Federal-aid highways, highway safety programs, and transit programs, and for other purposes." Pub. L. 109-59.

6

The Act, which repealed and replaced the Single State Registry System, created a Unified Carrier Registration Plan to govern the registration and the collection and distribution of fees generated. See 49 U.S.C. §§ 14504a(a)(8), (9). Each state chose whether to participate in the UCR Plan, and Kansas elected to do so. See 49 U.S.C. § 14504a(e); K.S.A. 2016 Supp. 66-1,115; K.S.A. 2016 Supp. 66-1,139a; K.A.R. 82-4-30a(c).

Under the UCR, a motor carrier and certain other passenger or freight carriers that operate in interstate commerce must submit a UCR registration fee to its designated base state in order to operate lawfully in the participating states. See 49 U.S.C. § 14504a(a)(2)(B), (a)(4), (a)(5); 49 C.F.R. § 392.2 (2016) ("Every commercial motor vehicle must be operated in accordance with the laws" of jurisdiction in which it is driven.). The UCR fees are shared among the participating states. 49 U.S.C. § 14504a(g), (h).

The UCR fee amount is determined by the size of the motor carrier's fleet of commercial motor vehicles. See 49 U.S.C. § 14504a(a)(2), (f)(1)(A)(i). For purposes of calculating fleet size, the Act adopts the definition of "commercial motor vehicle" in 49 U.S.C. § 31101(1), subchapter I of the MCSIA, which provides for general authority and state grants. The definition reads:

> "'[C]ommercial motor vehicle' means . . . a self-propelled or towed vehicle used on the highways in commerce *principally to transport passengers or cargo*, if the vehicle—
>
> "(A) has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater;
>
> "(B) is designed to transport more than 10 passengers including the driver; or

7

"(C) is used in transporting material found by the Secretary of Transportation to be hazardous." (Emphasis added.) 49 U.S.C. § 31101(1).

The truck stopped by Beas weighs at least 10,001 pounds; it is self-propelled and used on the highways in commerce. It is not used principally to transport passengers. In order to qualify as a commercial motor vehicle under the Act, it must be used principally to transport "cargo" to subject Midwest to the fee requirement.

Our primary goal when examining statutory language is determination of legislative intent. See *State ex rel. Secretary of DCF v. Smith*, 306 Kan. 40, 48, 392 P.3d 68 (2017). We employ "statutory interpretation, as long as the language used by the legislature is plain and unambiguous." *Ambrosier v. Brownback*, 304 Kan. 907, 911, 375 P.3d 1007 (2016). We give common words their ordinary meanings. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016). It is only when "the language is less than clear or is ambiguous" that the court should "move to statutory construction and use the canons of construction and legislative history and other background considerations to divine the legislature's intent." *Ambrosier*, 304 Kan. at 911.

We see flaws in the interpretation and application of the definition of "cargo" in both the majority and the dissent from the Court of Appeals.

The majority makes too much out of the fact that the crane had no role in the mechanical function of the truck. Neither the crane nor the truck truly retained any "independent character." The truck did not merely make the crane and its associated tools "easier" to transport. Each item was meaningless and useless outside the context of the whole.

The dissent's weakness is its dependence on "salability" as an indispensable attribute of cargo. While much "cargo" *may* be salable, not all *must* be. Parents who ferry children in their automobiles may refer fondly or ironically to those children as "precious cargo," although they would never sell them or trade them.

Congress did not define "cargo," as used in the UCR. When a statute does not define a term, the "words in a statute are assumed to bear their 'ordinary, contemporary, common meaning.'" *Walters v. Metro. Educ. Enterprises, Inc.*, 519 U.S. 202, 207, 117 S. Ct. 660, 136 L. Ed. 2d 644 (1997); see also *In re A.M.M.-H.*, 300 Kan. 532, 535, 331 P.3d 775 (2014) (appellate court must first attempt to determine legislative intent by "'giving common words their ordinary meanings'"). Dictionary definitions are good sources for the "ordinary, contemporary, common" meanings of words.

Black's Law Dictionary defines "cargo" as "[g]oods transported by a vessel, airplane, or vehicle; freight (1)." Black's Law Dictionary 255 (10th ed. 2014). "Freight" is further defined as "[g]oods transported by water, land, or air; cargo." Black's Law Dictionary 782 (10th ed. 2014). Merriam-Webster provides a similar definition of "cargo": "the goods or merchandise conveyed in a ship, airplane, or vehicle." (Online ed. 2017.) The essential character of "cargo" under these definitions is neither the mere fact of its ownership nor its salability. It is not its independence from the mechanical workings of its means of conveyance. It is its identity as goods and its amenability to and actuality of transport. Cargo is not only personal property. It need not be at the heart of or potentially at the heart of an exchange for money or one side of a barter for other goods or services. The essence of its existence is transit or the expectation or immediate aftermath of it. Speaking more metaphorically, we might also say that cargo's essence is inevitably transitory or impermanent.

9

Our recognition of this essence leads us to agree with a federal district court judge in Massachusetts who crafted the following, more precise definition of the term "cargo": "Under the most generous understanding of the term that common sense will allow, 'cargo' is 1) any item, 2) transported on a vessel from one point to another, 3) *with only a temporary connection to the vessel*." (Emphasis added.) *Am. Home Assur. Co. v. Fore River Dock & Dredge, Inc.*, 321 F. Supp. 2d 209, 223 (D. Mass. 2004) (Young, C.J.).

The case giving rise to this definition, *Fore River Dock,* involved the grounding of a tugboat and the wreck of a barge, followed by a legal set-to over insurance coverage. The judge was tasked with determining whether a crane that "was secured to the deck of the Barge by removable turnbuckles" and owned by another company was covered by an insurance policy as "'cargo' owned by a third party." 321 F. Supp. 2d at 222-23. Although the crane could be detached, it "had not actually been removed from the Barge for at least ten years." 321 F. Supp. 2d at 223. The "Barge functioned as an on-site working platform, and . . . the crane aided the Barge in this basic function." 321 F. Supp. 2d at 223. The district judge ruled that "[t]he crane . . . had more than a temporary connection to the Barge, and therefore cannot reasonably qualify as cargo." 321 F. Supp. 2d at 223.

Our search for additional authority further supports our conclusion. Most cases discussing "cargo" do so in the context of shipping goods. See, *e.g., In re World Imports Ltd.*, 820 F.3d 576 (3d Cir.) (maritime lien on cargo during bankruptcy proceeding), *cert. denied sub nom. World Imports, Ltd. v. OEC Grp. N.Y.*, 137 S. Ct. 340 (2016); *All Pac. Trading, Inc. v. Vessel M/V Hanjin Yosu*, 7 F.3d 1427 (9th Cir. 1993) (owners of "cargo" suing owner of vessel after cargo damaged by water); *American Mail Line Ltd. v. United States*, 377 F. Supp. 657 (W.D. Wash. 1974) (suit regarding cargo damaged by water during transportation). And courts often refer to the "loading" and "unloading" of cargo. See *American Trucking Associations, Inc. v. City of Los Angeles, Cal.*, 569 U.S. ___, 133 S. Ct. 2096, 186 L. Ed. 2d 177 (2013) (considering whether federal law preempts

10

provisions of agreement that trucking companies must sign before they could transport cargo at the Port of Los Angeles); *Lewan v. Soo Marine Supply, Inc.*, No. 14-CV-10953, 2016 WL 4072471 (E.D. Mich. 2016) (considering whether ship-chandler employer's negligence caused employee's fall). Various types of "cargo" also have been the subject of litigation, including a car, frozen chicken, steel, and flour. See *Barber v. Encompass Indem. Co.*, 458 Fed. Appx. 617 (9th Cir. 2011) (unpublished opinion) (car); *Scotlynn USA Div., Inc. v. Cold Ground Transp., LLC*, No. 2:15-CV-152-FTM-38CM, 2016 WL 6066682 (M.D. Fla. 2016) (frozen chicken); *Crispin Co. v. M/V Morning Park*, 578 F. Supp. 359 (S.D. Tex. 1984) (steel); see *Nashiwa v. Matson Nav. Co.*, 116 F. Supp. 897 (D. Hawaii 1953) (flour).

Having identified the temporarily attached nature of cargo as critical to its definition, the answer to the question before us is plain:  the crane and its associated tools are not cargo. The truck to which it is bolted is driven to a job site; the crane, with assists from its associated tools lifts a heavy object; and then the truck leaves the site. The crane does not come off of the truck, nor does the truck leave anything else behind at the site. Regardless of the fact that the crane does not affect the mechanical functioning of the truck, it is an essential part of the truck and the sole reason for its use. It is not merely temporary "cargo" transported by it. The crane is not "shipped" from job site to job site, nor is it loaded or unloaded. It is different in character from a car, frozen chicken, steel, or flour—those are all things that are loaded onto a means of conveyance, temporarily connected to the vessel, transported, and finally unloaded at a final destination.

Because the crane and tools do not qualify as cargo, the truck is not a commercial motor vehicle in Midwest's fleet. The Commission, the district judge, and the Court of Appeals majority erroneously affirmed the fine. See K.S.A. 2016 Supp. 77-621(c)(4) (court shall grant relief from an agency action if "the agency has erroneously interpreted or applied the law").

CONCLUSION

For all of the reasons explained above, we reverse the Court of Appeals' decision and the judgment of the district court and vacate the fine affirmed by the Kansas Corporation Commission.