No. 94,719

STATE OF KANSAS *ex rel.* TOPEKA POLICE DEPARTMENT, *Appellee,* v. $895.00 U.S. CURRENCY and 3.15 GRAMS COCAINE, *Appellant.*

(133 P.3d 91)

Opinion filed May 5, 2006.

Reid T. Nelson, capital appellate defender, argued the cause and was on the brief for appellant.

Robert D. Hecht, district attorney, argued the cause, and Amy M. Memmer, assistant district attorney, and Phill Kline, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: The question we must resolve arises under the Kansas Standard Asset Seizure and Forfeiture Act (KSASFA), K.S.A. 60-4101 et seq. The State began civil forfeiture proceedings after seizing $895 in U.S. Currency and 3.15 grams of cocaine during the criminal arrest of Maurice Wright. In this proceeding, the State Board of Indigents' Defense Services (BIDS) responded by filing a claim for present and anticipated attorney fees in Wright's criminal case. BIDS appeals from an order striking its claim based upon the district court's conclusion that BIDS lacked standing. We affirm.

When arrested on March 12, 2004, Wright had 3.15 grams of cocaine and $895 on his person. The property was seized for forfeiture during the arrest. On March 15, 2004, the district court appointed the Third Judicial District Public Defender's office to represent Wright in his criminal case. Pursuant to K.S.A. 2005 Supp. 22-4529, the district court ordered Wright to pay an application fee of $50 for his court-appointed counsel. At that time, Wright was in custody but had not been formally charged.

On April 15, 2004, the State commenced a civil forfeiture action in the district court against the $895 and 3.15 grams of cocaine by filing a "Notice of Pending Forfeiture" pursuant to K.S.A. 60-4109(a). Wright received a copy of the notice by residential service on April 24, 2004. Then, on August 13, 2004, the notice was published in The Topeka Metro News, the official county newspaper for Shawnee County, Kansas, pursuant to K.S.A. 60-4109(a)(3)(C).

Before entry of judgment on the seized property, BIDS filed an "Affidavit of Claimant" in the district court on May 11, 2004. BIDS

claimed that, under K.S.A. 60-4106(a)(5)(A), as a judgment cred-itor/lienholder, it had an interest in Wright's seized $895. In ad-dition to claiming the right for reimbursement of the $50 appli-cation fee, BIDS also asserted that it had an interest in Wright's forfeited property in the amount of $2,000 to "secure reimburse-ment of reasonable expenses" for anticipated legal services in his criminal case. Based on the 2002 BIDS guidelines and the felony charges filed against Wright, BIDS believed it would be entitled to a reasonable reimbursement of $2,000 if Wright's case went to trial.

The State filed a motion to strike BIDS's claim, arguing that BIDS lacked standing to contest the forfeiture action. The State asserted that BIDS's reliance on K.S.A. 60-4106(a)(5)(A) was mis-placed because BIDS never acquired an interest in the specific funds being forfeited. According to the State, BIDS had, at most, a general unsecured claim against Wright for legal services ren-dered. The State argued that a general interest in an unidentified portion of Wright's property was not enough to grant BIDS stand-ing to contest the forfeiture action. In the alternative, the State contended that even if BIDS had an interest in the property, the $895 was not exempt from forfeiture under the plain language of K.S.A. 60-4106(b)(3) because BIDS had actual or constructive no-tice of the property's seizure.

## DISTRICT COURT'S MEMORANDUM DECISION

The district court held a hearing on BIDS's claim. In a well-reasoned opinion, Shawnee County District Judge Nancy E. Par-rish granted the State's motion to strike. In its memorandum de-cision, the district court agreed with the State's contention that BIDS lacked standing to file a claim in the forfeiture action. The court first considered whether BIDS had an interest in the entire amount of $895, not merely the $50 initially ordered payable to BIDS by the court.

The district court observed that criminal charges were filed against Wright on March 22, 2004, in case No. 04CR480, but as of the date of the memorandum decision, Wright's case had not yet gone to trial. The court pointed out that if Wright were ac-

quitted or if his case were dismissed, any application fee paid would be remitted to him. Only if Wright were convicted would he be ordered to pay reimbursement to BIDS for his defense. Thus, the district court found that BIDS obtained no interest beyond $50, contingent upon Wright's criminal conviction.

The district court further rejected BIDS's contention that the $895 in seized funds was exempt from forfeiture under K.S.A. 60-4106(a) and, therefore, should be held as security for the reimbursement of BIDS's fees. The court found that, for the exemption to apply, the party asserting the exemption must first be an owner of or an interest holder in the property. See K.S.A. 60-4111(a). The court concluded that BIDS did not meet the requirements of K.S.A. 60-4111(a).

With regard to the relationship between BIDS and Wright, the district court stated that, because BIDS was entitled to receive $50 from Wright upon Wright's criminal conviction in case No. 04CR480, a debtor/creditor relationship arguably existed. Regardless, the court determined that BIDS was not an "interest holder" as defined under K.S.A. 60-4102(e). The district court rejected BIDS's assertion that it was a judgment creditor/lienholder in the amount of $2,000, finding BIDS's assertion problematic on two grounds. First, there was no court order directing that $2,000 be paid to BIDS. Thus, at the time of the seizure of Wright's property, he did not owe this amount to BIDS. Second, BIDS's claim against Wright for attorney fees in the amount of $50 was not secured by a lien on Wright's property, so BIDS could not be characterized as a lien creditor. See K.S.A. 2005 Supp. 84-9-102(a)(52)(A) (defining "lien creditor" as a "creditor that has acquired a lien on the property. involved by attachment, levy, or the like").

In addition, the district court found that BIDS was not a judgment creditor because the court's order to pay $50 to BIDS did not confer on BIDS the right to enforce immediate execution of the order to recover that amount, nor was the order a judgment for damages against Wright. See Black's Law Dictionary 861 (8th ed. 2004) (defining "judgment creditor" as "[a] person having a legal right to enforce execution of a judgment for a specific sum of money" and defining "money judgment" as "[a] judgment for

damages subject to immediate execution, as distinguished from equitable or injunctive relief").

Finally, the district court found it troublesome that BIDS did not have an interest in the particular currency seized from Wright, which the court found was a requirement of K.S.A. 60-4111(a). The court observed that BIDS did not allege in its affidavit of claimant that the court ordered the $50 in attorney fees to be paid directly from the seized funds; instead, BIDS merely claimed that the "court initially ordered attorney fees of $50." Therefore, the district court determined that nothing connected the award of attorney fees to the seized property. The court concluded that BIDS's right to $50 from Wright could be characterized as a "general right," which did not entitle it to receive payment from any particular asset of Wright's property. Consequently, the district court held that BIDS lacked standing to file a claim against the forfeiture of the seized funds.

## Did the District Court Err in Granting the Motion to Strike?

BIDS contends that the district court erred in striking its claim for "reasonable attorney fees" because attorney fees in connection with criminal cases are generally exempt from forfeiture under K.S.A. 60-4106(a)(5)(A). BIDS further contends that the district court erred in applying the following provision of K.S.A. 60-4111(a): "Only an owner of or interest holder in property seized for forfeiture may file a claim." BIDS argues that K.S.A. 60-4111(a) does not apply to the attorney fees exemption. While BIDS raised another issue involving the constitutionality of the notice published by the State in the judicial forfeiture action, we do not reach the issue because our resolution on the order to strike is dispositive, rendering the notice issue moot.

### Standard of Review

The resolution of this case involves statutory provisions of the Kansas Standard Asset Seizure and Forfeiture Act, K.S.A. 60-4101 *et seq.* The interpretation of a statute is a question of law, and an appellate court's review is unlimited. An appellate court is not

bound by the district court's interpretation of a statute. See *Cooper v. Werholtz*, 277 Kan. 250, 252, 83 P.3d 1212 (2004).

In resolving questions of statutory interpretation, this court follows a cardinal rule of statutory construction:

"It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. Stated another way, when a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in it." State ex rel. Stovall v. Meneley, 271 Kan. 355, 378, 22 P.3d 124 (2001) (citing In re Marriage of Killman, 264 Kan. 33, 42-43, 955 P.2d 1228 [1998]).

## DISCUSSION AND ANALYSIS

This appeal involves a question of first impression in Kansas. The action arises under the provisions of the KSASFA, which is based in large part on the Model Asset Seizure and Forfeiture Act (1991) (Model Act). While there are slight differences between the Model Act and the KSASFA, most of the provisions of the Model Act are incorporated into the Kansas Act by our legislature. See L. 1994, ch. 339; Model Act § 10 (cited in 3 Kessler, Civil and Criminal Forfeiture, App. J-73 [2005]) ("[o]nly an owner of or interest holder in property seized for forfeiture may file a claim"); K.S.A. 60-4111(a). The Model Act represents the most advanced expression of social efforts to cope effectively with the financial aspects of economically motivated crimes. The Model Act was drawn with a recognition that people deserve to be protected from the predatory reach of financially motivated criminal enterprises. Forfeiture is effective because it seizes the economic strength of these enterprises and redirects it to positive social goals. Moreover, provisions of the Model Act have been tested and found to be effective in Arizona since 1986 and adopted initially in various forms in Hawaii, Oregon, Louisiana, and Arkansas. See 3 Kessler, Civil and Criminal Forfeiture, App. J-73. Forfeiture statutes have also been implemented in California, Connecticut, Florida, Illinois, Maine, Mar-

yland, Massachusetts, Minnesota, Mississippi, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, South Carolina, South Dakota, Utah, Virginia, Washington, West Virginia, and Wisconsin. 3 Kessler, Civil and Criminal Forfeiture (2006 Supp.).

In the present case, the State commenced its action by filing a notice of pending forfeiture in the district court pursuant to K.S.A. 60-4109(a). Within 30 days, BIDS responded by filing an affidavit of claimant under the provisions of K.S.A. 60-4111 seeking the seized $895 under an exemption for attorney fees pursuant to K.S.A. 60-4106(a)(5)(A). The district court ordered BIDS's claim striken for lack of standing. Before the district court, BIDS claimed it was an "interest holder" of the property under K.S.A. 60-4111(a), defined in K.S.A. 60-4102(e):

" 'Interest holder' means a secured party within the meaning of the uniform commercial code, a mortgagee, lien creditor, judgment creditor or the beneficiary of a security interest or encumbrance pertaining to an interest in property, whose interest would be perfected against a good faith purchaser for value."

Contrary to its affidavit of claim filed in the forfeiture action and its position before the district court, BIDS charts a different course on appeal. Instead of relying on its alleged status as an "interest holder," BIDS argues that its claim does not depend upon its alleged status as an interest holder, but rests independently upon the attorney fees exemption provided in K.S.A. 60-4106(a)(5)(A):

"An interest in property acquired in good faith by an attorney as reasonable payment or to secure payment for legal services in a criminal matter relating to violations of this act or for the reimbursement of reasonable expenses related to the legal services is exempt from forfeiture unless before the interest was acquired the attorney knew of a judicial determination of probable cause that the property is subject to forfeiture." (Emphasis added.)

Although we are convinced that the provisions of K.S.A. 60-4111(a) limiting the filing of a claim to an owner or interest holder provides no exception for attorney fees, we nevertheless address directly BIDS's claim to the $895 based upon the attorney fees exemption.

The $895 was seized along with 3.15 grams of cocaine from Wright at the time of his arrest. At no time did BIDS have pos-

session or control of the seized $895. K.S.A. 60-4106(a)(5)(A) requires the one claiming the exemption to have acquired an interest in good faith. While the word "acquire" is not defined in the KSASFA, its ordinary meaning refers to one in possession of the property. Moreover, when the ordinary meaning of this word is considered with other provisions of the KSASFA, we believe the legislature clearly intended that the ordinary meaning of acquire apply. Time honored and tested rules of statutory construction support such a result.

"Ordinary words are to be given their ordinary meaning, and a statute should not be so read as to add that which is not readily found therein or to read out what as a matter of ordinary English language is in it. [Citation omitted.]" *GT, Kansas, L.L.C. v. Riley County Register of Deeds*, 271 Kan. 311, 316, 22 P.3d 600 (2001).

"Acquire" is defined in Black's Law Dictionary 25 (8th ed. 2004) as: "To gain possession or control of; to get or obtain." Again, in Webster's New Collegiate Dictionary 10 (1973) "acquire" is defined as: "1. [T]o get as one's own; a: to come into possession or control of often by unspecified means." The ordinary meaning of the word as used in the attorney fees exemption statute contemplates possession or control of the property seized.

This court has also often applied another sound principle of statutory construction in determining legislative intent:

"In construing statutes and determining legislative intent, several provisions of an act or acts, in pari materia, must be construed together with a view of reconciling and bringing them into workable harmony if possible. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. The court must give effect to the legislature's intent even though words, phrases, or clauses at some place in the statute must be omitted or inserted." *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, Syl. ¶ 2, 69 P.3d 1087 (2003).

In this case, we need not omit or insert terminology because the entire KSASFA in pari materia, adequately answers the arguments advanced by BIDS. BIDS argues that the provisions of K.S.A. 60-4111 and K.S.A. 60-4106(a)(5)(A) make no sense if read together in that no attorney would ever be entitled to fees if he or she had to be an owner or interest holder as required by 60-4111. However,

reading both statutes together makes perfect sense if the attorney has accepted fees or acquired fees under the exemption in good faith. While BIDS had no opportunity to acquire the property because it was seized upon the arrest of Wright, the KSASFA itself allows the State to constructively seize the property, K.S.A. 60-4109(a) and K.S.A. 60-4107(c), and proceed with forfeiture. Had Wright first transferred the property to his attorney as a retainer in the criminal case, the attorney in possession of the property would have been an "interest holder" under the KSASFA, as that term is defined in K.S.A. 60-4102(e), and would have been authorized under K.S.A. 60-4111(a) as an "interest holder," subject to conditions enumerated in K.S.A. 60-4106, to file a claim in the forfeiture action. Reading the provisions of the KSASFA in pari materia dispels the argument of BIDS and provides clarity.

In addition, when the provision for attorney fees exemption is carefully read, it is clear that in order to be exempt from forfeiture, the attorney must receive the fees in good faith as reasonable fees to secure payment for legal services in a criminal matter relating to violations of the KSASFA unless "before the interest was acquired the attorney knew of a judicial determination of probable cause that the property is subject to forfeiture." K.S.A. 60-4106(a)(5)(A). According to BIDS, it acquired an interest when it was appointed to represent Wright. The district court opinion answers BIDS's claim by pointing out that even the $50 charged upon initial appointment of counsel was contingent upon conviction, and if Wright were acquitted, he would not be required to pay the $50. Moreover, the district court persuasively ascertained that, at most, BIDS was a general creditor without a claim on specific funds, i.e., the $895. To demonstrate the wisdom of the legislature in its use of the word "acquire" in the KSASFA, it is notable that, under the Uniform Commercial Code (UCC), one may perfect an interest in money through possession. See K.S.A. 2005 Supp. 84-9-312; K.S.A. 2005 Supp. 84-9-313. Thus, an attorney who has acquired a retainer for a fee would by his or her possession have a security interest in the money and would be able to file a claim in a forfeiture proceeding.

Even if we were to consider, for the sake of argument, that BIDS qualified as an interest holder capable of filing a claim, the following provisions of K.S.A. 60-4106(b)(3) would necessarily defeat BIDS's claim of exemption:

"(b) Notwithstanding subsection (a) [relating to all exemptions including attorney fees], property is not exempt from forfeiture, even though the owner or interest holder lacked knowledge or reason to know that the conduct giving rise to property's forfeiture had occurred or was likely to occur, if the:

. . . .

(3) owner or interest holder acquired the property with notice of the property's actual or constructive seizure for forfeiture under this act, or with reason to believe that the property was subject to forfeiture under this act."

BIDS, as the attorney for Wright, knew that he was charged with a felony drug charge and, at the time BIDS filed its claim in the forfeiture action, knew the $895 had been seized at the time of Wright's arrest and was the subject of the forfeiture action. Thus, in accordance with K.S.A. 60-4106(b)(3), the property was not exempt from forfeiture because BIDS had "reason to believe that the property was subject to forfeiture under this act."

BIDS claims on appeal that it acquired its interest the day it was appointed to represent Wright and did not know at that time the property was subject to forfeiture. This claim, however, lacks merit for this lack of knowledge does not avail BIDS as indicated above. Its claim further points to the necessity under the KSASFA to define the term "acquire" as "to have possession or control of"; otherwise, the use of "acquired" in K.S.A. 60-4106(a)(5)(A) becomes meaningless.

BIDS was appointed soon after the arrest of defendant. The property, including cocaine, was seized at the time of arrest. (See K.S.A. 60-4112[j] with regard to the rebuttable presumption arising when money is found in close proximity to contraband.) Moreover, at the time it filed its claim, BIDS was on actual notice of the seizure for forfeiture and was the attorney for defendant "with reason to believe that the property was subject to forfeiture under this act." See K.S.A. 60-4106(b)(3).

Finally, the KSASFA provides a method for recovery of seized property to aid in the payment of attorney fees. K.S.A. 60-4112(e)

provides "[a] person charged with a criminal offense may apply at any time before final judgment to the court where the forfeiture proceeding is pending for the release of property seized for forfeiture, that is necessary for the defense of the person's criminal charge," provided the conditions set forth in the statute are met. Thus, the KSASFA authorizes the one from whom the property is seized to submit a claim for the seized property to pay present and anticipated attorney fees.

K.S.A. 60-4112(h) provides that "[i]n any proceeding under this act, if a claim is based on any exemption provided for in this act, the burden of proving the existence of the exemption is on the claimant, and [it] is not necessary for the seizing agency or plaintiff's attorney to negate the exemption in any application or complaint." Consistent with the provisions of the KSASFA, including K.S.A. 60-4111(a) and K.S.A. 60-4112(e), the district court was correct in its determination that BIDS was not an "interest holder" of the $895 and "[o]nly an owner of or interest holder in property seized for forfeiture may file a claim" for the property under K.S.A. 60-4111(a). BIDS never acquired an interest in the property as required by the exemption language in order to be eligible to file a claim. As stated by the district court, BIDS's only claim was that of a general creditor with no right to file a claim in the specific funds seized and subject to forfeiture.

## Motion to Strike

Upon the State's motion to strike BIDS's claim, the district court concluded that BIDS had no standing to make a claim. In the context of a forfeiture proceeding, K.S.A. 60-4112(q) provides that "[e]xcept as otherwise provided by this act, all proceedings hereunder shall be governed by the rules of civil procedure pursuant to K.S.A. 60-101 et seq., and amendments thereto." The motion to strike is governed by the rules of civil procedure, K.S.A. 60-212(f), which provides:

"*Motion to strike.* Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by this article, upon motion made by a party within 20 days after the service of the pleading upon such party or upon the court's own initiative at any time, the judge may order stricken from any pleading

any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

An order to strike is not "appealable unless it has the features of finality by serving the same purpose as a demurrer to test the sufficiency of a claim or defense." 4 Gard & Casad, Kansas C. of Civ. Proc. Annot. §60-212, p. 74 (4th ed. 2003); see *Harris v. City of Topeka*, 180 Kan. 758, Syl. ¶ 1, 308 P.2d 88 (1957). *Cf. G.S. Johnson Co. v. N. Sauer Milling Co.*, 148 Kan. 861, Syl. ¶ 1, 84 P.2d 934 (1938) (where certain allegations in petition involve merits of the cause of action, order to strike allegations is appealable order and is equivalent to order sustaining demurrer).

The order to strike BIDS's claim for lack of standing had all the features of finality in that it fully adjudicated any and all interests claimed in the $895 and, therefore, was an appealable order. In such a case, the district court is limited to the four corners of the pleadings and documents on file with the court, and no extrinsic evidence is permitted. *Cf.* K.S.A. 60-212(c) (motion for judgment on the pleadings); *Tabor v. Lederer*, 205 Kan. 746, 748, 472 P.2d 209 (1970) (question is whether moving party is entitled to judgment on face of the pleadings themselves); *Fielding v. Alkire*, 124 Kan. 592, 597, 261 Pac. 597 (1927) ("When judgment is rendered on the pleadings, those allegations of the amended petition which are denied or put in issue are not considered. Only the express or implied admissions and the allegations of the answer are the basis of such ruling."); see *RK Constructors, Inc. v. Fusco Corp.*, 231 Conn. 381, 383 n.2, 650 A.2d 153 (1994). Thus, if the lack of standing is clearly evident from the filed claim or answer as it was in this case, the motion to strike will be successful.

BIDS never acquired an interest in the specific funds, the $895, which were subject to forfeiture. Moreover, we agree with the district court's finding that BIDS's right to $50 from Wright was a general right, giving BIDS an unsecured claim against Wright's property, contingent upon his conviction. While no Kansas cases have addressed whether an unsecured creditor has standing to contest a civil forfeiture proceeding, federal courts, including the Tenth Circuit Court of Appeals, have consistently held that "un-

secured creditors do not have standing to challenge the civil forfeiture of their debtors' property." *United States v. $20,193.39 U.S. Currency*, 16 F.3d 344, 346 (9th Cir. 1994) (citing *United States v. Four Million, Two Hundred Fifty-Five Thousand*, 762 F.2d 895, 907 [11th Cir. 1985], *cert. denied* 474 U.S. 1056 [1986]; *United States v. $47,875.00 in U.S. Currency*, 746 F.2d 291, 294 [5th Cir. 1984]; *United States v. $3,799.00 in U.S. Currency*, 684 F.2d 674, 678 [10th Cir. 1982]; *United States v. 127 Shares of Stock in Paradigm Mfg.*, 758 F. Supp. 581, 583 [E.D. Cal. 1990]). As previously alluded to, the reasoning behind this holding is that general creditors, unlike secured creditors, cannot claim an interest in a particular asset or piece of property.

Moreover, the Model Asset Seizure and Forfeiture Act of 1991, upon which the KSASFA is based, sheds some guidance upon the issue of standing. Although the Model Act does not contain a statutory exemption for attorney fees, it does contain a provision pertaining to owner/interest holder requirements identical to our Kansas provision, K.S.A. 60-4111(a). Section 10 of the Model Act provides that "[o]nly an owner of or interest holder in property seized for forfeiture may file a claim, and shall do so in the manner provided in this section." 3 Kessler, Civil and Criminal Forfeiture, App. J-73. Commentary on the Model Act explains that such a claim is necessary to show the Government that someone with "standing asserts an interest." 3 Kessler, Civil and Criminal Forfeiture, App. J-74. Consistent with the language in the Model Act, the language in the KSASFA shows that the legislature intended that one must be an owner of or interest holder in the seized property in order to have standing in the forfeiture proceedings. BIDS was neither an owner nor interest holder in this case; therefore, BIDS lacked standing to assert a claim in the forfeiture action.

As for payment of attorney fees, § 11(e) of the Model Act does allow the release of property, under certain circumstances, for payment of a defendant's attorney fees. However, as explained by Steven L. Kessler, this provision was included in response to the United States Supreme Court's holding in *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 628-31, 105 L. Ed. 2d 528, 109 S. Ct. 2646 (1989), in which the Court allowed the re-

capture of already expended funds and held that recapture was appropriate where the recipient had notice that the funds were subject to forfeiture. Kessler further explains that, under § 11(e), defense counsel who "accepts payment after prevailing at the hearing provided for in this section and who provides services in exchange for value is not in jeopardy of having their payment recaptured from them by the government." 3 Kessler, Civil and Criminal Forfeiture, App. J-79. The present case, however, does not involve the recapture of payments made to defense attorneys.

## Legislative Intent for Recovery of Attorney Fees

With regard to the legislature's intent to provide reimbursement to appointed counsel, BIDS directs this court's attention to the Aid to Indigent Defendants Act, K.S.A. 22-4501 *et seq*.; see K.S.A. 2005 Supp. 22-4504(c) (when counsel appointed for defendant, cost of legal services may be entered as judgment against defendant if convicted and found to be financially able to pay; action to recover may be brought against any person to whom defendant transferred or conveyed any of defendant's property without adequate monetary consideration after date of commission of crime). BIDS contends that in the present case, Wright's money was transferred to Shawnee County, and that, in filing its claim, BIDS was "following up on its statutory obligation to attempt to recoup fees for the State of Kansas."

K.S.A. 2005 Supp. 22-4504(c) is inapplicable to this case. At the time BIDS filed its claim, Wright had neither been convicted of a crime nor been found financially able to pay any amount of attorney fees. In addition, Wright had not transferred or conveyed the $895 to anyone after the date of the alleged crime; instead the Topeka Police Department seized the 3.15 grams of cocaine and the money immediately upon Wright's arrest on March 12, 2004, which was the same date as his offense. K.S.A. 2005 Supp. 22-4504 did not convey to BIDS the authority to file a claim against the forfeiture of the property seized in this case. K.S.A. 2005 Supp. 22-4504 provides no assistance to BIDS's arguments.

## Conflicting Provisions Within the KSASFA

BIDS further argues that applying an interest holder requirement to K.S.A. 60-4106(a)(5)(A) would defeat the statute's provisions and legislative intent allowing attorney fees to be taken from seized assets and would also conflict with "other provisions" in the KSASFA. These contentions have no merit.

BIDS points out, for example, that K.S.A. 60-4112(e) provides that a "person charged with a criminal offense may apply at any time before final judgment to the court where the forfeiture proceeding is pending for the release of property seized for forfeiture, that is necessary for the defense of the person's criminal charge." BIDS argues that it makes "little sense" to apply an interest holder requirement to an attorney attempting to gain access to seized funds under K.S.A. 60-4106(a)(5)(A) but then apply no such requirement to an attorney receiving funds through the criminal defendant's application pursuant to K.S.A. 60-4112(e) (criminal defendant may apply for release of seized property to pay for defense attorney fees).

As noted above, an attorney in possession of funds for attorney fees under the KSASFA qualifies as an interest holder and may file a claim in the forfeiture proceeding. K.S.A. 60-4112(c) provides that "[i]f property is seized for forfeiture . . . the court, on an application filed by an owner or interest holder in the property . . . may issue an order to show cause to the seizing agency, for a hearing on the sole issue of whether probable cause for forfeiture of the property then exists." (Emphasis added.) Also, the Act provides that the criminal defendant or the one from whom the property has been seized may fille a claim in the forfeiture proceeding. K.S.A. 60-4112(e). K.S.A. 60-4112(e) does not "blindly" mandate that, upon the defendant's application, the court must release the seized property. Instead, the district court must hold a probable cause hearing if the defendant/owner is first able to establish several factors set out by the statute. The same is true for an attorney in possession of funds "acquired." In this way, the KSASFA makes perfect sense in that before any funds are transferred to or kept by an attorney under the exemption, the district

court in the forfeiture first must assure itself that the statutory provisions have been satisfied.

The district court's application of the owner/interest holder requirement to 60-4106(a)(5)(A) does not conflict with other provisions of the KSASFA or with the legislature's intent to provide attorney fees out of seized property.

## Federal Law

Next, BIDS argues that the interest holder requirement should not apply to K.S.A. 60-4106(a)(5)(A) because, according to BIDS, the district court "relied heavily on federal case law, which is quite different than Kansas' law." This, however, is not an accurate depiction of the district court's memorandum decision. The district court cited only two federal cases and did not rely on any federal forfeiture statutes. Regardless, BIDS's contention has no merit.

The district court first cited *Kadonsky v. United States*, 216 F.3d 499, 508 (5th Cir. 2000), for the well-known rule that the claimant seeking to contest a civil forfeiture carries the burden of establishing standing. BIDS does not take issue with this rule of law and cites no Kansas law holding to the contrary. Our search revealed no Kansas case law specifically referencing this rule of law. Other jurisdictions, however, have agreed with the rule followed by *Kadonsky*. See, e.g., *United States v. $20,193.39 U.S. Currency*, 16 F.3d at 346. Regardless, BIDS appears to concede that it had the burden to show it had standing to contest the forfeiture action before the district court.

The second case cited by the district court, *United States v. Reckmeyer*, 836 F.2d 200, 206 (4th Cir. 1987), was cited to support the court's reasoning by analogy that "general creditors" have a right to payment from their debtor's estate but not from any particular asset within that estate. BIDS points out that *Reckmeyer* dealt with 21 U.S.C. § 853, part of the Comprehensive Forfeiture Act of 1984, which contains no specific exemptions like the ones listed in K.S.A. 60-4106(a), including attorney fees.

In *Reckmeyer*, the government challenged the district court's judgments exempting property from criminal forfeiture on petitions by third parties. Under 21 U.S.C. § 853(n), two categories of

petitioners/third-parties are protected: (1) those whose legal interests in the property were superior to the defendant's at the time of the commission of the acts giving rise to the forfeiture and (2) " 'bona fide purchasers for value' " without knowledge that the property was subject to forfeiture. 836 F.2d at 203-04.

The *Reckmeyer* court acknowledged that "[a]lthough general creditors can claim an interest in their debtors' estates, they cannot claim an interest in any particular asset that makes up that estate." 836 F.2d at 206. That fact, however, was of no consequence because the order of criminal forfeiture reached all the discovered and undiscovered assets of the defendant; and the government had seized all his known assets. Therefore, the petitioners in *Reckmeyer* met the threshold qualification for relief by asserting a legal interest in the property subject to forfeiture. 836 F.2d at 206. In addition, the *Reckmeyer* court held that unsecured creditors qualified as " 'bona fide purchaser[s] for value' " under the criminal forfeiture statute. 836 F.2d at 208. This holding is clearly not relevant to our Kansas case, but *Reckmeyer* was not cited for that purpose.

BIDS stresses that, in contrast to the Kansas civil forfeiture act, the federal criminal forfeiture act cited in *Reckmeyer* does not contain an exemption for payment of attorney fees. While that is true, the district court cited *Reckmeyer* in the context of Kansas' statutory definition of "interest holder" as a "secured party." See K.S.A. 60-4102(e). In analyzing BIDS's relationship with Wright, the district court found no way to characterize BIDS as a secured party. *Reckmeyer* provided persuasive rules of law concerning general, unsecured creditors. The fact that the federal criminal forfeiture act does not contain an attorney fee exemption provision does not mean the district court's reasoning was erroneous when it relied on *Reckmeyer*. Moreover, the present case involved a civil forfeiture. The *Reckmeyer* court distinguished the civil context from the criminal context, stating:

"It is the dilemma of linking their interest to a specific asset rather than the problem of asserting a legal interest in the debtor's estate that frustrates general creditors who attempt to contest civil forfeitures. . . . Contrary to the government's suggestion, however, the failure of general creditors to prevail in civil forfeiture actions has not turned on their inability to demonstrate a protectable

interest in the property of the person whose conduct led to the forfeiture but rather on their inability to demonstrate that their interest lay in the specific asset being forfeited." 836 F.2d at 206 n.3.

As additional support for its contention that the interest holder requirement should not apply to the attorney fee exemption provision, BIDS cites *United States v. Monsanto*, 491 U.S. 600, 105 L. Ed. 2d 512, 109 S. Ct. 2657 (1989). There, the United States Supreme Court held that the United States Constitution does not require a defendant to use assets seized for forfeiture to pay his or her legal fees. In so holding, the *Monsanto* Court contrasted 21 U.S.C. § 853 (criminal forfeitures) with 18 U.S.C. § 3681(c)(1)(B)(ii) (forfeited collateral profits) of the Victims Crime Act of 1984, in which Congress expressly exempts a portion of special forfeited collateral profits (e.g., profits from books, movies, etc.) for legal representation. The *Monsanto* Court concluded that the express exemption in 18 U.S.C. § 3681 indicated that Congress intended to omit such an exemption from 21 U.S.C. § 853. 491 U.S. at 610-11.

BIDS argues that the Kansas attorney fee provision is much like the federal collateral profits provision in *Monsanto* because both contain explicit exemptions for attorney fees. BIDS essentially contends that the Kansas Legislature expressly intended the attorney fees exemption to apply. Again, BIDS makes this argument without claiming to be an "owner of" or "interest holder in" the property in question.

**Other States**

Kansas is one of the few states that statutorily exempts from forfeiture funds used or secured to pay reasonable attorney fees in connection with a defendant's criminal defense. See Edgeworth, Asset Forfeiture: Practice and Procedure in State and Federal Courts, p. 52 (2004) (citing Conn. Gen. Stat. § 54-36h[d]; 725 Ill. Comp. Stat. 150/12; K.S.A. 60-4106[a][5]). Connecticut broadly exempts all money or property "used or intended to be used by the owner thereof to pay legitimate attorney's fees in connection with his defense." Conn. Gen. Stat. § 56-36h(d) (Rev. 2005). Illinois exempts property constituting "bona fide attorney's fees paid

to an attorney for services rendered or to be rendered . . . where such property was paid before its seizure, before the issuance of any seizure warrant or court order prohibiting transfer of the property and where the attorney . . . did not know that it was . . . subject to forfeiture." Ill. Comp. Stat. 150/12 §12 (2002). Neither of those states' statutes are particularly helpful to this case, however, because they do not contain language concerning an attorney's "acquired interest" in the property as seen in K.S.A. 60-4106(a)(5)(A).

Although Georgia's forfeiture statute contains a very limited provision for attorney fees, see Ga. Code. Ann. § 16-13-49(t)(3) (2003), not applicable to the facts here, it does require that a party must be an "owner" or "interest holder" in order to contest a forfeiture. *McFarley v. State of Ga.*, 268 Ga. App. 621, 622, 602 S.E.2d 341 (2004) (citing Ga. Code Ann. § 16-13-49[n][3] and [o][3]). Similar to Kansas, the Georgia statute defines an "interest holder" as a "secured party" within the meaning of Ga. Code Ann. § 11-9-102 or "the beneficiary of a perfected encumbrance pertaining to an interest in property." Ga. Code Ann. § 16-13-49(a)(6). Georgia courts have held parties had no standing to contest forfeitures where those parties failed to show ownership or interest holder status. See, e.g., *McFarley*, 268 Ga. App. at 623; *Hill v. State of Ga.*, 178 Ga. App. 563, 565, 343 S.E. 2d 776 (1986).

## CONCLUSION

The district court concluded that BIDS was neither an owner of nor an interest holder in the $895 and therefore lacked standing to file a claim in the forfeiture proceeding. The provisions of the KSASFA support this conclusion. See K.S.A. 60-4111(a); K.S.A. 60-4102(e), (j). K.S.A. 60-4111(a) provides that "[o]nly an owner of or interest holder in property seized for forfeiture may file a claim" in the proceeding commenced by the State with the "filing [of] a notice of pending forfeiture" as provided for in K.S.A. 60-4109. Moreover, the attorney fees exemption in K.S.A. 60-4106(a)(5)(A) does not operate independently but must be read in conjunction with the claims provision of K.S.A. 60-4111(a). BIDS never acquired the $895; that is, BIDS did not obtain control or

possession of the funds subject to forfeiture as required by the attorney fees exemption. Indeed, had BIDS acquired such funds it would have become an "interest holder" as that term is defined in the KSASFA. Since BIDS was not an owner of or an interest holder in the funds, BIDS lacked standing to make a claim in the forfeiture proceeding. The district court properly granted the State's motion to strike BIDS's claim.

Affirmed.