Kerry M. Gasper, Counsel
Unified School District No. 505
3245 SW Arrowhead Road
Topeka, Kansas 66614
Dear Mr. Gasper:
As legal counsel for Unified School District No. 505, Labette County (Chetopa-St. Paul), you request our opinion regarding the manner in which member districts for a local board of education are established. Specifically, you ask whether there is "a constitutional basis for K.S.A. 72-8001 et seq. supporting both the authority of a board of education and the rights of the school district's voters to select the school district's method of election" and whether because of a potential conflict between statutes K.S.A. 2006 Supp. 72-6769 supersedes K.S.A.72-8004.
It appears that Unified School District No. 505, Labette County (Chetopa-St.Paul) is a unique school district in that not all of its territory is contiguous. The school district includes territory in four counties in southeast Kansas: Neosho, Crawford, Cherokee and Labette. The bulk of the territory is in the southeast corner of Neosho County and the southeast corner of Labette County, areas that are approximately 45 miles apart.[2] Unified School District No. 503, Labette County (Parsons) and Unified School District No. 504, Labette County (Oswego) in northeast Labette County divide the territory of Chetopa-St. Paul. The current configuration of Chetopa-St. Paul occurred when territory in Neosho County and Crawford County was transferred pursuant to K.S.A.72-7108 from Unified School District No. 101, Neosho County (Erie) to Chetopa-St. Paul. After the territory was transferred, the Board of Education for Chetopa-St.Paul voted to change the method of election of board members from Voting plan-A[3] to Voting plan-B[4] and from the election at-large method to the three member district method. The Board's efforts in drawing the boundaries of the three member districts "included diligent, good-faith attempts to address the desires of concerned patrons, and multiple endeavors to draw the boundaries in a manner as to make the population within the boundaries `as nearly as equal as practicable' as contemplated by K.S.A. 72-8004. The proposed member districts were also designed to be contiguous in nature, likewise required by K.S.A. 72-8004."[5] The area comprised of territory mainly in southeast Neosho County is one member district while the area comprised of the territory mainly in Labette County is divided into two member districts.[6]
The Kansas Constitution prescribes that school districts be maintained, developed and operated by locally elected boards, but does not provide a manner through which the members of the boards are to be elected.[7] "The legislature may provide for the election or appointment of all officers and the filling of all vacancies not otherwise provided for in [the Kansas] constitution."[8] "All officers whose election or appointment is not otherwise provided for, shall be chosen or appointed as may be prescribed by law."[9] The Legislature has through the School Election Act[10] and K.S.A. 72-8001 etseq. provided a procedure for electing school board members. The Legislature is not precluded from modifying the procedure that it has enacted. As long as the procedure meets the "one person, one vote" rule of the Equal Protection Clause in the Fourteenth Amendment to the United States Constitution[11] and does not preclude from voting those persons deemed by the Kansas Constitution to be qualified electors,[12] the Legislature possesses complete discretion in determining whether to modify the election procedure for members of local boards of education. Electors of unified school districts do not possess a constitutional right to a particular procedure of election. While the Legislature has conferred upon boards of education and the electors of unified school districts the opportunity to determine in part how board members are to be elected, a constitutional right to make such a selection does not exist.
A board of education with approval by the electors of a unified school district selects the manner in which members of the board are elected.[13] Under Voting plan-A, all seven board members are elected at large in both the primary election and the general election.[14]
Under Voting plan-B and Voting plan-C, the unified school district is divided into two, three, or six member districts.[15] If members are elected under Voting plan-B, an elector may cast a ballot in the primary election only for the member positions corresponding to the member district in which the elector resides and for the at-large member, but then votes for all member positions in the general election.[16] If members are elected under Voting plan-C, an elector may cast a ballot in both the primary election and the general election only for the member positions corresponding to the member district in which the elector resides and for the at-large member.[17]
Prior to July 1, 2006, the board of education for a unified school district was authorized to "change the boundaries of board member districts, if any, within the school district, including any territory added thereto. The board [was] directed to make any appropriate changes in the member districts of the school district by resolution. . . ."[18] "Appropriateness of redistricting [was] to be determined on the basis of equal protection analysis, so that an elector's vote is not diluted in comparison to other electors."[19] While variations in population among the member districts of 5% above or below the ideal mean population appeared to be the threshold of acceptability for the courts, total variations of 10% or more were acceptable with proper justification.[20] The member districts were to be comprised of one contiguous compact area and have equal population as nearly as practicable.[21] A resolution changing the member district boundaries had to be adopted "in the month of October next preceding every regular election of board members of the school district."[22]
During the 2006 legislative session, K.S.A. 72-6769 (Furse) was amended.
 "(a) (1) Except as provided by paragraph (3), the board of education of any school district may change the boundaries of board member districts, if any, within the school district, including any territory added thereto at any time the board determines such change is necessary. The board is directed to make any appropriate changes in the board member districts of the school district by resolution duly adopted at a meeting of the board in the month of October next preceding every regular election of board members of the school district. The board shall draw boundaries of board member districts that are as compact and equal in population as possible. The boundaries of board member districts shall be drawn, to the extent practical, to include whole voting precincts. Upon a finding by the board that whole voting precincts cannot be included, boundaries shall be drawn to include whole census blocks.
 "(2) If the population of any board member district is at least 5% above or 5% below the mean population of all board member districts within the school district, based upon the most recently published federal decennial census or upon population estimates as determined by the county election officer of the home county of the school district, the board of education of such school district shall change the boundaries of the board member districts so that the population of any board member district is not greater than 5% above nor 5% below the mean population of all board member districts within the school district. If the board does not change the boundaries as required by this paragraph, the county or district attorney of the home county of the school district shall notify the board of its duty to make such changes. If within 60 days after receiving such notification, the board fails to change the boundaries as required by this paragraph, the county or district attorney shall file an action in the district court of such county requesting an order to compel the school board to change the board member district boundaries as required by this paragraph.
 "(3) No boundary changes shall be made during the ninety-day period preceding any regular election of the school district. Such resolution shall be published one time in a newspaper having general circulation in the district, and such publication shall be made within two weeks after the adoption of such resolution. No action shall be brought in any court to contest the location of the boundaries of any member district except within 60 days immediately following the publication of such resolution. Any such action shall be filed in the name of the state by a county or district attorney or the attorney general in a district court of competent jurisdiction. Such a court is authorized to advance any such action on its docket for early determination to facilitate the conduct of elections to be held in the unified district.
 "(b) Amendments to board member district boundaries may be made to correct errors therein or to make the territory thereof more practicable. In the event of transfer of any territory into a school district, such territory shall be assigned to one or more board member districts, if any, by the board of education by resolution duly adopted no later than 60 days prior to any regular election in the school district. In the event of transfer of any territory out of the school district, board member districts shall be adjusted, if needed, by the board by resolution duly adopted no later than 60 days prior to any regular election in the school district.
 "Whenever the boundaries of any board member district are changed, the board of education shall immediately notify, in writing, the county election officer of the home county of the school district. Such notice shall describe the boundaries as changed."
[23]
When establishing member districts, a board of education is nowrequired by K.S.A. 2006 Supp. 72-6769 to draw the member districts suchthat: the board member districts are as compact and equal in populationas possible; the member district boundaries include whole votingprecincts, unless there is a finding by the board that whole votingprecincts cannot be included, in which case whole census blocks are tobe included; and the population in each member district is not greaterthan 5% above nor 5% below the mean population of all board memberdistricts within the school district. The major changes achieved throughthe 2006 amendments are that a board of education may modify memberdistrict boundaries at any time,[24] except for the ninety-day periodpreceding any regular election of the school district, and that the 5%variation above or below the mean population in the member districts isnow the statutory maximum allowed. The longstanding requirement inK.S.A. 72-8004 that a member district be comprised of one contiguouscompact area remained unchanged.[25]
 In construing K.S.A. 2006 Supp. 72-6769 and K.S.A. 72-8001 etseq., the rules of statutory construction are followed.
 "It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. Stated another way, when a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in it."[26]
 "In construing statutes and determining legislative intent, several provisions of an act or acts, in pari materia, must be construed together with a view of reconciling and bringing them into workable harmony if possible. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible."[27]
 "As a general rule, statutes are construed to avoid unreasonable results. There is a presumption that the legislature does not intend to enact useless or meaningless legislation. A construction of a statute should be avoided which would render the application of a statute impracticable or, inconvenient or, which would require the performance of an impossible act."[28]
 "It is presumed the legislature had and acted with full knowledge and information as to the subject matter of the statute, as to prior and existing law and legislation on the subject of the statute and as to the judicial decisions with respect to such prior and existing law and legislation."[29]
Provisions in K.S.A. 2006 Supp. 72-6769 and K.S.A. 72-8004 require thatmember districts be compact. K.S.A. 2006 Supp. 72-6769 requires furtherthat the member districts be "equal in population as possible" whileK.S.A. 72-8004 states that the member districts must "have equalpopulation as nearly as is practicable." K.S.A. 72-8004 includes therequirement that a member district be comprised of contiguous territory.Prior to the 2006 amendment of K.S.A. 72-6769, it was understood that amember district was to be drawn in compliance with the Equal Protectionrequirements established through case law and that the member districtterritory be contiguous. K.S.A. 2006 Supp. 72-6769 and K.S.A.72-8001 et seq. must continue to be construed together. The effect ofthe 2006 amendment of the population provision in K.S.A. 2006 Supp.72-6769 is to tighten the permissible population disparity among memberdistricts. The Legislature left untouched the requirement that a memberdistrict be comprised of contiguous territory. The population provisionsin K.S.A. 2006 Supp. 72-6769 and in K.S.A. 72-8004 require that themember districts be drawn so that the population in each member districtis not greater than 5% above nor 5% below the mean population of allboard member districts within the school district. It is presumed thatat the time the 2006 amendment was adopted, the Legislature knew that aunified school district could include noncontiguousterritory.[30] It is also presumed that the Legislature was aware ofthe longstanding requirement that a member district be comprised ofcontiguous territory. Lastly, it is presumed that the Legislature wasaware that the amendment had the effect of tightening the acceptablepopulation disparity among member districts, making it more difficultfor member districts to be drawn and creating the possibility that suchcondition would be impossible to meet.[31] K.S.A. 2006 Supp. 72-6769does not supersede K.S.A. 72-8001 et seq.
In review, the Legislature has through K.S.A. 72-8001 et seq.conferred upon boards of education and the electors of unified schooldistricts the opportunity to determine in part how board members are tobe elected. A constitutional right to make such a selection, however,does not exist. The provisions of K.S.A. 2006 Supp. 72-6769 and K.S.A.72-8001 et seq. are to be construed together. A board of education isrequired when establishing member districts to draw the member districtssuch that: the member districts are as compact and equal in populationas possible; each member district be comprised of one contiguous area;the member district boundaries include whole voting precincts, unlessthere is a finding by the board that whole voting precincts cannot beincluded, in which case whole census blocks are to be included; and thepopulation in each member district be not greater than 5% above nor 5%below the mean population of all board member districts within theschool district.
 Sincerely,
PAUL J. MORRISON
 Attorney General of Kansas
 Richard D. Smith
 Assistant Attorney General
 PJM:JLM:RDS:jm
[2] See Correspondence, David G. Shriver, Attorney, Kansas Associationof School Boards, September 5, 2006.
[3] "Voting plan-A: All electors, who are otherwise qualifiedaccording to law, and who reside in the school district may vote in boththe primary and general election for all member positions." K.S.A.72-8003(a). See also K.S.A. 25-2005(c).
[4] "Voting plan-B: All electors, who are otherwise qualifiedaccording to law, and who reside in the member district may vote in theprimary election for the member positions of such member district andfor the at-large member position. All electors, who are otherwisequalified according to law, and who reside in the school district mayvote in the general election for all member positions, including theat-large member position, to be filled." K.S.A. 72-8003(b). Seealso K.S.A. 25-2005(c).
[5] Correspondence, Kerry M. Gasper, August 1, 2006.
[6] Id.
[7] Kan. Const., Art. 6, § 5 ("Local public schools under the generalsupervision of the state board of education shall be maintained,developed and operated by locally elected boards").
[8] Kan. Const., Art. 2, § 18.
[9] Kan. Const., Art. 15, § 1.
[10] K.S.A. 25-2001 et seq.
[11] See Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20L.Ed.2d 45 (1968); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12L.Ed.2d 506 (1964); In re Stovall, 273 Kan. 715, 718 (2002).
[12] See Kan. Const., Art. 5, § 1.
[13] K.S.A. 72-8001.
[14] K.S.A. 72-8003(a).
[15] See K.S.A. 72-8009. If the school district is divided into twomember districts, three members are elected from each member districtand one member is elected at large. When the school district is dividedinto three member districts, two members are elected from each districtand one member is elected at large. If there are six member districts,one member is elected from each district and one member is elected atlarge.
[16] K.S.A. 72-8003(b).
[17] K.S.A. 72-8003(c).
[18] K.S.A. 72-6769 (Furse).
[19] Attorney General Opinion No. 88-124.
[20] Petition of Stephan, 251 Kan. 597, 606 (1992), quoting In reHouse Bill No. 2620, 225 Kan. 827, 832 (1979) ("[a] 5% deviation overand a 5% deviation under the ideal district population appears to be theline drawn by the federal courts. If the total maximum variation is over10%, proper justification for such a variation appears to benecessary"). See also In re Stovall, 273 Kan. at 718-19.
[21] See K.S.A. 72-8004(a). The requirements applied "to every changein which the proposed method of election is a district method. . . ."Id.
[22] K.S.A. 72-6769 (Furse).
[23] L. 2006, Ch. 188, § 1 (italics denote new language; strikeoutdenotes repealed language). Chapter 188 includes two newly enactedstatutes that regard the manner of computing the assessed valuation ofidentified school districts for the payment, distribution, or allocationof state aid and the levying of school taxes. See K.S.A. 2006 Supp.72-6624a; 72-6625a. The definition of "school district" in thosestatutes is not applicable to K.S.A. 2006 Supp. 72-6769.
[24] The Legislature left in place a limitation during which a changeof method of election could occur. See K.S.A. 72-8008.
[25] The requirement was included in the initial enactment of thestatute in L. 1968, Ch. 59, § 16.
[26] State ex rel. Topeka Police Department v. $895.00 U.S.Currency, 281 Kan. 819, 825 (2006).
[27] State ex rel. Topeka Police Department, supra. at 827.
[28] In re Protest of Smith, 272 Kan. 1396, 1403-04 (2002) (internalcitations and quotation marks omitted).
[29] Stark v. Mercantile Bank, N.A., 29 Kan.App.2d 717, 723 (2000)(internal quotation marks omitted). See also State ex rel. State Boardof Healing Arts v. Beyrle, 269 Kan. 616, 629 (2000).
[30] K.S.A. 72-8703; 72-8704; 72-8705.
[31] K.S.A. 72-8001 states in part that a board of education maychange the method of election "unless prohibited by the conditionsprovided in [K.S.A. 72-8001 et seq.]."